[L. A. No. 17699. In Bank.—March 5, 1941.]

GEORGIA A. LYNCH et al., as Executrix, etc., Respondents, v. C. H. BENCINI et al., Defendants; LEROY A. WRIGHT, Appellant.

J. A. Donnelly and C. M. Monroe for Appellant.

Dempster McKee for Respondents.

THE COURT.—A petition for hearing in this case was granted to the end that further consideration be given to the contentions of the plaintiffs. On such consideration, we agree with the disposition of the appeal by the District Court of Appeal of the Fourth Appellate District and adopt, with a slight deletion, the opinion of that court, prepared

by Presiding Justice Barnard, as the opinion of this court. It is as follows:

"On August 23, 1929, a written agreement was prepared which purports to be between Frank Lynch on the one hand and six named persons on the other hand. However, only five of the latter signed the agreement. The agreement provides that whereas a named corporation is indebted to Lynch in the sum of $275,000, Lynch agrees to cancel this debt and accept in lieu thereof enough shares of stock in said corporation which at 4/5ths of their par value would amount to $275,000, the same to be delivered as soon as a permit was issued by the corporation commissioner. It further provides that in consideration of this cancellation of the debt the other six persons, as directors of the corporation, jointly and several agree to purchase from Lynch within seven months after delivery of the stock to him, so much of said stock as at 4/5ths of its par value would represent $175,000. Lynch then agrees to sell to the others 'any portion or all of said stock' at a named price if all or any part of said stock is purchased within thirty days after he acquires the stock, and at slightly increasing prices if said stock is purchased in succeeding months up to the seventh. The contract then provides: 'Should dividends be paid on the above stock during the life of this contract, such dividends are to be credited on the purchase price hereinbefore set forth.'

"In this action, which was filed on February 8, 1934, by Frank Lynch, only four of the other parties who signed the contract were named as defendants. The contract of August 23, 1929, was attached to the complaint and made a part thereof. The complaint alleges that on September 29, 1929, the plaintiff canceled the note for $275,000 and as consideration therefor accepted 13,750 shares of the stock of this corporation which were issued to him on that day; that the plaintiff has duly done and performed all things which were to be done by him under the terms of said contract; that the defendants have not, nor has any one of them, purchased from the plaintiff the said stock or any part thereof which they agreed to purchase under the terms of the contract; that the whole of the purchase price, to wit, $190,312.50, together with interest from April 29, 1930, is due and unpaid from the defendants and from each of them; and that demand has been made. The prayer is for judgment against each

of the defendants for $190,312.50, with interest at 7 per cent from April 29, 1930.

"Two of the four defendants were never served, so far as the record shows. The defendant Wright was not served until January 10, 1936, and the return of this service was not filed until August 4, 1936, on which date this default was entered. The defendant Gray filed a demurrer on July 30, 1936, and filed an answer on September 15, 1936, with an amended answer on February 5, 1937. He alleged that he had signed the agreement on the express condition that it was not to be effective as to him until the signature of the sixth other party had been obtained, and that this had not been done. Nothing further was done until June 29, 1939, when the clerk entered a default judgment against the defendant Wright for $312,429.64, being the full amount prayed for in the complaint with interest at 7 per cent from April 29, 1930, to June 29, 1939. On April 22, 1939, and before this judgment was entered, Frank Lynch died, and the present plaintiffs were appointed executrix and executor of his will on May 12, 1939. On July 11, 1939, they applied for and obtained an order of court substituting them as plaintiffs in this action. On July 21, 1939, there was filed a dismissal of the action with prejudice, as to the defendant Gray only, the dismissal being dated June 3, 1937.

"On July 12, 1939, the defendant Wright served and filed notice of motion for an order vacating this judgment and dismissing the action, which motion was later made and denied. Subsequently, a motion to reopen and reconsider was made and denied. Within the statutory time, the defendant Wright appealed from the judgment and from the orders denying his motions.

"The questions presented involve the powers of the clerk under section 585 of the Code of Civil Procedure and the effect of sections 579 and 581a of that code under the circumstances here appearing. The respondent contends that these other sections have no application here since under section 585 it was the duty of the clerk to enter judgment immediately upon entering the appellant's default and that, in contemplation of law, it must be deemed that this judgment was entered on August 4, 1936, within three years after the summons were served, and that no discretion remained to be exercised by the court.

■ ''While it has been stated in some cases, as sufficient under the circumstances and for the purposes therein, that the judgment entered by the clerk might be regarded as relating back to the time when default was entered this is not necessarily always true and would not be true where a timely appeal from the judgment is taken. If an appeal otherwise possesses merit, it could hardly be held that this legal fiction applied and cut off the right of appeal. (See *De Leonis* vs. *Walsh*, 140 Cal. 175 [73 Pac. 813].) If this were true, the plaintiff could prevent an appeal from a default judgment by having the clerk, after entering the default, delay the entry of judgment until the time for appeal has expired. Moreover, the judgment here entered by the clerk discloses on its face reasons why it should not be considered as having been entered at the date of the default. The judgment recites that it is 'hereby' entered 'upon the application of said plaintiff.' Not only was this judgment entered at a time when the plaintiff was dead, and at a time when the statute made it the duty of the court to dismiss the action, but it is for an amount which includes more than $38,000 interest accruing between the entry of the default and the date judgment was entered.

■ ''The first question that should be considered is whether this action is one of the kind in which a clerk has power to enter judgment. In other words, whether this is 'an action arising upon contract for the recovery of money or damages only,' within the meaning of that provision in subdivision 1 of section 585.

''It has been held in a number of cases that a clerk has the power to enter judgment only where the proper amount appears from the terms of the contract as alleged in the complaint or follows therefrom by mere mathematical computation. For this reason it has been held that in an action involving any sort of accounting the clerk cannot enter a judgment. (*Crossman* vs. *Vivienda Water Co.*, 136 Cal. 571 [69 Pac. 220].) It is clear that the clerk has no such power where the taking of any evidence is necessary and it has been held that he has no such power where the reasonable value of services or goods must be determined. In *Landwehr* vs. *Gillette*, 174 Cal. 654 [163 Pac. 1018], the meaning of this provision of section 585 is given more thorough consideration than in any other case to which our attention has been called. The court there said:

" 'While it is true that the language used in subdivision 1 of the section is quite broad and authorizes the clerk after default to enter up judgment in all actions ''arising upon contract for the recovery of money or damages only,'' still what is meant by that language is that the contract to warrant the exercise of such authority by the clerk alone in entering judgment must by its terms as set forth in the complaint call for the payment of some fixed and definite sum in money or damages. In the nature of things this provision of the code must be construed to apply to contracts which provide for some definite fixed amount of damages ascertainable from the contract sued on, or from the terms of which a certain computation or calculation may be made by the clerk. As the duty of the clerk is purely ministerial, his power could only be exercised and properly apply in the case of such a contract, and must be limited thereto. If the contract declared on is indefinite and uncertain in the amount of damages which the plaintiff is entitled to recover on it, and in the nature of things must be ascertained and fixed, the matter then is necessarily one for judicial determination by the court and not for ministerial action by the clerk. Hence, it must appear from the contract sued on, either from its terms as set forth in the complaint or from the allegations in the latter respecting it, that a definite or liquidated sum of money is to be paid as damages; an amount which is definitely fixed by the contract sued on, or which from the allegations of the complaint may be ascertained by mere computation or mathematical computation of the clerk.'

"The court then pointed out that under any other circumstances the default of the defendant merely admits that something is due but does not admit that the amount prayed for constitutes that amount.

"We think this interpretation of this statutory provision is eminently correct and should not be departed from. The language used in section 585 indicates an intention to provide, in subdivision 1, for the entry of judgment by the clerk where no evidence is necessary to disclose the correct amount, and by subdivision 2 for judgment by the court when the taking of evidence or the exercise of discretion is necessary. Evidence is as necessary in order to fix the amount of damages for breach of contract as it is in tort actions, unless this is fixed by the agreement. Subdivision 1 of section 585

seems to refer more to actions based upon contract than to those based upon a breach of contract, although it would include an action for breach of contract in which the amount of the damages had also been agreed upon. But, as pointed out in *Landwehr* vs. *Gillette, supra,* it must appear from the terms of the contract that a definite sum was thereby fixed, to be paid as damages.

"The respondents mainly contend, with respect to this question, that their complaint stated a cause of action. The question, however, is not whether the complaint states a cause of action but whether it states one that falls within subdivision 1 of section 585. The respondents rely on *Christerson* vs. *French,* 180 Cal. 523 [182 Pac. 27], in which the plaintiff was allowed to recover under a default judgment for the breach of a contract. Very few facts are given in the opinion, although the court does say that the action is 'based on contract for the recovery of damage.' It may be that the contract there in question fixed the amount of damages for the breach in question. However that may be, it does appear that the court gave little consideration to the point now before us. Apparently the court assumed that the action was one coming within the provisions of subdivision 1 of section 585 since that question was not raised, and since the defendant was relying upon the contentions that the filing of a demurrer and motion to strike raised questions which must be decided by the court and that the complaint failed to state a cause of action. If it be assumed that this case in any way conflicts with the views expressed in *Landwehr* vs. *Gillette, supra,* we prefer to follow the latter case.

"In the instant case it is difficult to tell upon what the plaintiff based his demand. The contract did not provide for a present sale of the stock. In fact, the plaintiff did not then have the stock and it was not known whether or not the commissioner of corporations would ever permit the stock to be sold and delivered to him. The other parties merely agreed to buy the stock at a future time, contingent upon certain other things. The plaintiff affirmatively alleges that the defendants have not, nor has any one of them, purchased from the plaintiff said stock or any part thereof. It could hardly be an action for the purchase price of stock which was never purchased and, if it was, there are no allegations showing a delivery or tender of the stock or of facts

which would justify a judgment for the full purchase price while leaving the plaintiff in full possession of stock which was supposedly worth $190,000. Moreover, the contract specifically provides that if any dividends are paid on the stock such amounts are to be credited on the named purchase price. It is not alleged that no dividends were ever received, although the plaintiff held the stock for ten years, and there is no allegation that it is or ever was worthless. While the plaintiff alleges that he had done everything to be performed on his part under the terms of the contract this would still be true if he had received very substantial dividends on the stock.

"It seems quite clear that this is an action for damages for breach of the contract to purchase the stock and the contract makes no provision, definite or otherwise, for the amount of damages in case of its breach. The complaint contains no allegations even purporting to show the amount of damage sustained, or as to the value of the stock or what has become of it. As a matter of common justice, if the stock has a value, the plaintiff should not be allowed to keep it and also recover the full purchase price. If it has some value but less than the amount the others agreed to pay he might be entitled to damages in some amount but no attempt was made to allege anything as to this, definitely or otherwise. While the prayer is for a certain amount, the allegations of the complaint and the terms of the contract are to be considered in determining whether or not the action is one coming within the provisions of subdivision 1 of section 585, under the authorities above cited. The allegations of the complaint are so indefinite, incomplete and uncertain as to fairly and clearly require, in any court of justice, that evidence should be taken to determine the amount to which the plaintiff was entitled. If we assume that the complaint is sufficient in the sense that, in the absence of a demurrer, it will permit a recovery in some amount, this is not sufficient for the purposes now under consideration. The amount to which the plaintiff was entitled under the allegations of the complaint is not ascertainable from any mere ministerial computation that could be made by the clerk. The allegations of the complaint are such as, at best, called for the taking of evidence and the exercise of judicial action.

"The respondents contend that objections based upon the absence from the complaint of allegations as to the delivery

of this stock, the passing of title, the value of the stock and like matters, are completely answered by the case of *Mason* vs. *Lievre,* 145 Cal. 514 [78 Pac. 1040], from which they quote:

" 'The intention to sell and the intention to buy are both clear and unmistakable from the written expressions of the parties, and whatever significance might attach to the acts of payment and delivery would be in the nature of evidence, and not as of the essence of the contract.'

"In that case the sale was complete, and the language quoted has no application here, although the latter part thereof is suggestive. The very fact that such things are evidentiary matters emphasizes their absence and indicates the impropriety of allowing a clerk to enter a judgment before they have been presented and considered by a court.

"The next question suggested is as to whether, assuming that the clerk otherwise had power under section 585 to enter this judgment, he had such power in view of section 579, which provides that in an action against several defendants the court may, in its discretion, render judgment against one and leave the action to proceed against the others whenever a several judgment is proper. To the extent that that section requires a court to exercise judicial discretion and decide whether a several judgment is proper before entering judgment against one defendant and allowing the action to proceed against others, that section seems to conflict with subdivision 1 of section 585, which seems to permit the clerk to enter a judgment against one of several defendants without regard to whether or not a several judgment is proper. This would seem to give the clerk more power in such a case than has the court and by exercising it the clerk would seem to be depriving the court of the opportunity of exercising the discretion imposed upon it by section 579. This case is an illustration of the good reasons that might exist for not depriving the court of the discretion mentioned in section 579. While all of the signers of this contract were severally liable they were also equally liable one with another. At the time the appellant defaulted, the defendant Gray had appeared and the action was still pending against him in what is, in a very real sense, the same obligation. It was, in fact, a case in which the matter should have been held in abeyance until it was also decided against Gray, although the judgment, when finally determined upon, would

be equally applicable against both of these defendants. The injustice of the action taken particularly appears in view of the fact that a dismissal with prejudice was later, and before judgment was entered against the appellant, given to the defendant Gray. If, as is probable, something was paid by Gray for this great benefit, whatever he paid should have been applied as a reduction of the judgment against the appellant.

"In this connection the appellant relies upon the case of *Trans-Pacific T. Co.* vs. *Patsy F. & R. Co.*, 189 Cal. 509 [209 Pac. 357]. The respondent contends that this case has no bearing here because the 1933 amendment to section 585 struck out the reference therein to section 414 of the Code of Civil Procedure, it being argued that this amendment was adopted for the purpose of nullifying the effect of the opinion in the case cited. That case has no direct bearing here as it involved a situation where all of the defendants had been served. The 1933 amendment to section 585 does not affect our present problem for since then, as well as before, section 585 purports to permit the clerk to enter a judgment when some but not all of the defendants are served. However, in the case last cited, the court did say:

" 'The liability of the defendants and appellant as stockholders being several (*Brown* vs. *Merrill*, 107 Cal. 446 [48 Am. St. Rep. 145, 40 Pac. 557]), the case falls under section 579 of the Code of Civil Procedure, which provides: "In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper." Under this section the discretion vested is a judicial one, to be exercised by the court, and not the clerk. The court erred in refusing to exercise this discretion and vacate the judgment entered by the clerk against appellant.'

"While this is suggestive here and while the apparent conflict between these sections raises an interesting question, it is not necessary to further consider the same under the view we take upon the other points raised.

"If it be assumed that the clerk had power to enter judgment in this case under section 585 and irrespective of section 579, the next question is whether a judgment thus entered is not only good upon its face but conclusive and immune from a direct attack on appeal. This question involves the

effect of the last paragraph of section 581a, which was added by amendment in 1933. This paragraph reads:

" 'All actions, heretofore or hereafter commenced, must be dismissed by the court in which the same may be pending, on its own motion, or on the motion of any party interested therein, if summons has been served, and no answer has been filed, if plaintiff fails, or has failed, to have judgment entered within three years after service of summons.'

"The precise question seems never to have been determined. The respondents rely on certain cases as controlling on this point, but we do not so regard them. In *Cook* vs. *Justice's Court,* 16 Cal. App. (2d) 745 [61 Pac. (2d) 357], a judgment had not been entered and the effect of section 581a under an appeal from the judgment was not considered. While there is some *dicta* in the opinion the holding is merely that prohibition will not lie against the performance of a ministerial act. In *Merner Lumber Co.* vs. *Silvey,* 29 Cal. App. (2d) 426 [84 Pac. (2d) 1062], a motion was made more than a year and a half after the judgment was entered, and after it had become final, to set it aside and dismiss the action. It was there held that the court had jurisdiction in spite of section 581a, so the judgment was not void upon its face. However, the clerk in entering a default judgment, is acting for the court and to hold that a court has jurisdiction in such a case is far from holding that such an act, if taken in disregard of another statute, is free from error and that a judgment so entered may not be directly attacked on appeal. . . . The respondents also rely upon several other cases, including *Christerson* vs. *French, supra.* These cases were all decided long before the last paragraph was added to section 581a and at a time when no further duty rested upon the plaintiff. In several of these cases it is stated that the failure of the clerk to do his duty cannot prejudice the rights of the plaintiff or confer any rights upon the defendant whose default has been entered. While this may have been true at that time, a statute can impose a duty upon a plaintiff with a resulting benefit to a defendant, and this has been done by the last paragraph of section 581a where a specific penalty is provided when the plaintiff fails to perform a further duty which is imposed upon him.

"The respondents contend that the word 'must' in section 581a does not indicate any curtailment of jurisdiction

to enter judgment under subdivision 1 of section 585. While this may be true, the last paragraph of section 581a, taken as a whole, imposes a duty upon the plaintiff and imposes a duty on the court to dismiss the action if the plaintiff fails to perform that duty. While formerly the only duty in such a case was one resting upon the clerk, with no penalty for his delay, it is now made the duty of the plaintiff to 'have judgment entered' within the prescribed time, in other words to take affirmative steps to that end.

"When the plaintiff fails to perform that duty his rights are affected and a benefit is conferred upon the defendant by the provision that the court must dismiss the action. The duty thus imposed on the court, however, is not confined to where such action is requested by the defendant but is one which the court is required to exercise 'on its own motion.' This statutory provision is clearly intended to apply to cases where the defendant is not yet taking any steps for his own protection. Clearly, under the statute, it is error for the court to fail to perform this duty directly imposed upon it. While a judgment so entered may not be void for lack of jurisdiction the court's error in failing to perform that duty is one which may be corrected on appeal from the judgment, if taken within the statutory time. The duties and rights of the parties are still affected by the last paragraph of section 581a and the judgment itself is still subject to review on a direct and timely appeal. Assuming that the clerk had here a duty to perform in his ministerial capacity, and that he had no power to pass upon the effect of the last paragraph of section 581a, the court had both the power and the duty to do so, the matter was directly presented to it on timely motions after judgment, and the matter is now properly here for review. Under such circumstances the error may be corrected and the judgment, entered and allowed to stand in disregard of the provisions of section 581a, should be reversed.

"The provision of section 581a which we have been considering would be largely meaningless, if, where such a judgment is applied for in the absence of the defendant, the judgment is to be taken as conclusive and immune from direct attack. To so construe this provision would be not only to disregard that part thereof which provides that the action must be dismissed by the court 'on its own motion,' but would be to write in a provision that the amendment was to apply

only when the defendant objected at the time the judgment was applied for. No such provision was included by the legislature and should not be added by judicial decision to the plain language of the statute. This statutory provision was plainly intended to apply in just such a case as this, where the defendant did not appear. The direct requirement of the statute would be rendered nugatory if the disregard thereof may not be corrected on a timely appeal.

"A further consideration is that at the time this judgment was entered the plaintiff was dead. No substitution of parties had been made and there was no party plaintiff before the court. Under somewhat similar circumstances the entry of a judgment has been held improper. (*Maxon* vs. *Avery,* 32 Cal. App. (2d) 300 [89 Pac. (2d) 684] ; *Boyd* v. *Lancaster,* 32 Cal. App. (2d) 574 [90 Pac. (2d) 317] ; *Scoville* vs. *Keglor,* 27 Cal. App. (2d) 17 [80 Pac. (2d) 162].) In the last named case, where it was contended that a judgment could be entered *nunc pro tunc* as of a date before the death of the plaintiff, this court said:

" 'We are unable, in view of the Supreme Court's language in *De Leonis* vs. *Walsh, supra,* to avoid the conclusion that the trial court erred in undertaking to file its findings of fact and conclusions of law and to enter its judgment before making an order of substitution of the administratrix of the estate of J. M. Scoville for that plaintiff. In so far as the interest of the decedent was concerned there was at the date when the findings of fact and conclusions of law were actually filed and the judgment entered no plaintiff before the court. To be sure, after the findings of fact and conclusions of law should be properly filed and the judgment properly entered, they would be treated by the law for the purpose of avoiding the lapsing of the cause of action as having been made as of the date to which it was provided that, *nunc pro tunc,* they should relate. But if when they were respectively filed and entered in fact there was as to the decedent's interest no plaintiff before the court the defect would appear to us to go to the jurisdiction to file and enter them.'

"It is well settled that there are no presumptions in favor of a judgment entered by a clerk. It is peculiarly appropriate that we are required to indulge in no presumptions in favor of this judgment. The strange and unusual facts, including the many and long delays on the part of the plain-

tiff, the singling out of certain persons as against others, the dismissal as to the only one who appeared and the entry of judgment against this appellant alone, the ignoring of all such matters as the value of the stock still retained and whether or not dividends had been received thereon, and the taking of judgment by other parties shortly after the death of the plaintiff, all suggest that the true facts and actual situation are not disclosed by the record here. While these matters are not, in themselves, controlling, they illustrate the wisdom of the statutes and rules we have held applicable, and strongly indicate that their application here will result in no injustice.''

The judgment and orders are reversed with directions to the trial court to dismiss the action as to the appellant.

Houser, J., took no part in the decision of this case.