[Civ. No. 11479.   Third Dist.   Sept. 11, 1967.]

ROBERT O. LEWIS et al., Plaintiffs and Appellants, v. O. J. LeBARON et al., Defendants and Respondents.

*Assigned by the Chairman of the Judicial Council.

Ross L. Bigler for Plaintiffs and Appellants.

Harry A. Hammond for Defendants and Respondents.

PIERCE, P. J.—Plaintiffs Robert O. Lewis and Phoebe Schaap, brother and sister, adult children of Orin Lewis, deceased, appeal from an adverse judgment in a suit (for convenience hereinafter called by its number in the superior

court, No. 20601) brought by plaintiffs. In part it sought equitable relief which would effectually vacate an earlier default judgment in action No. 19901 in which defendant LeBaron herein was plaintiff and Mount Vernon Mines of Nevada, Inc., a Nevada Corporation ("Mt. Vernon") was the sole defendant.[1]

Background facts are these: At the time of his death Orin Lewis was president and sole owner of the shares of Mt. Vernon. Defendant Harry Hammond was the attorney for the personal representative of the Lewis estate. Hammond was also the attorney who had organized the corporation. In February 1962 the estate was distributed to plaintiffs who thereby became owners of all of the corporate shares.

Action No. 19901 was brought in November 1963 by Hammond through defendant O. J. LeBaron (dba Northern Credit Service, a collection agency) as his assignee. Hammond was LeBaron's attorney. The action was to collect (1) a reasonable attorney's fee allegedly due for Hammond's services to the corporation and (2) repayment of money allegedly advanced and loaned by Hammond to the corporation. One Clarence Robinson was served. He is said to have been vice-president of Mt. Vernon at the time. No appearance was made and pursuant to LeBaron's request a *clerk's* default followed by a *clerk's* default judgment were entered on November 27, 1963, for the full amount prayed for, $6,343.26, plus interest and costs. Over a year thereafter, on January 4, 1965, plaintiffs herein, as individuals, moved to set aside the default judgment on the grounds of "fraud, inadvertence, or mistake." The motion was contested and relief was denied by the court.

Two days later, on January 6, 1965, this action No. 20601 was commenced against Hammond, LeBaron, Robinson, and Constable Louis A. Price. Price is named because, after the default judgment in action No. 19901, a writ of execution had issued. A judicial sale of certain real property (the only corporate asset) was held and on January 10, 1964, the property was sold to LeBaron for the amount of the judgment. (Disposal of the property has been restrained, a cash bond having been filed by plaintiffs.)

In action No. 20601 an amended complaint challenges the default judgment in action No. 19901 and seeks to have the proceedings in execution of judgment enjoined. It also asks to

---

[1]The file in #19901 is a defendant's exhibit in this suit.

have plaintiffs declared the owners of the real property mentioned and their title quieted. In addition, damages are sought against Hammond on the grounds of fraudulent acts allegedly committed by Hammond against plaintiffs as individuals. The answer of defendants, represented by Hammond, denies the essential allegations of the complaint, also sets up affirmative defenses, including the bar of the period of limitations fixed by Code of Civil Procedure section 473 and the contention of an incapacity of plaintiffs to sue. A separate "trial" on the special issues was held. It was there urged by defendants that by nonpayment of franchise taxes and other charges in Nevada, the state of origin, and in California, where the corporation had originally qualified to transact business, Mt. Vernon had become powerless, under the provisions of Revenue and Taxation Code section 23301,[2] to defend action No. 19901. Incident to the latter contention defendants argued that plaintiffs' sole rights were as shareholders, hence their action was "derivative;" thus the proscription of said section 23301 was applicable to action No. 20601. The court gave judgment for defendants. This appeal followed and, of course, there has been no trial of any of the issues raised by plaintiffs' amended complaint.

The controlling question before us is the validity of the default judgment in action No. 19901. We hold it is void. That holding requires us to discuss the possible future of this controversy hopefully in avoidance of a future appeal (which, if the proceedings already taken have not already done so, would seemingly dissipate any possibility of ultimate monetary benefit to any of the parties).

RE THE INVALIDITY OF THE DEFAULT AND DEFAULT JUDGMENT

At the trial of special defenses in action No. 20601 (and possibly in the earlier litigation) defendants themselves offered certifications by the Secretaries of State of Nevada and California, showing that the corporate charter of Mt. Vernon had been revoked in Nevada (Nev.Rev.Stat. § 78.175, as amended) and "suspended," i.e., forfeited, in California (Rev. & Tax. Code §§ 23301, 23302). The Nevada revocation was in March 1961; the California suspension in January 1962. In both instances there had been no reinstatement. The

---

[2] With exceptions not pertinent here section 23301 provides that "the corporate powers, rights and privileges of a domestic taxpayer shall be suspended, and the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this State shall be forfeited" for such delinquency.

corporation is thus in a state of suspended animation in both states but it is not "dissolved." (See Nev.Rev.Stat. § 78.180; Rev. & Tax. Code § 23305; *Castner* v. *First Nat. Bank of Anchorage* (9th Cir. 1960) 278 F.2d 376, 382-383.)

This intelligence, although coming to us through defendants' own evidence in action No. 20601 is, in legal contemplation, the same as though the facts appeared on the face of the record in action No. 19901. (*Thompson* v. *Cook*, 20 Cal.2d 564, 569 [127 P.2d 909]; *Akley* v. *Bassett*, 189 Cal. 625, 639 [209 P. 576]; *Hill* v. *City Cab etc. Co.*, 79 Cal. 188 [21 P. 728]; *Jones* v. *Walker*, 47 Cal.App.2d 566, 570 [118 P.2d 299].) (The forfeiture of Mt. Vernon's charter, at least for one of the delinquencies, was also undoubtedly shown at the time of the hearing of the motion by Lewis and Schaap in action No. 19901. Although we do not have a reporter's transcript of that hearing, the clerk's minutes refer to the introduction of a certificate from a secretary of state as plaintiff's (i.e., LeBaron's) exhibit No. 1.)

These facts should have been alleged in the complaint or otherwise brought to the court's attention. Failure to do so constituted a fraud upon the court in action No. 19901. Instead of a true allegation, the verified complaint contained a false one that Mt. Vernon was "duly . . . existing" under Nevada laws, and that it was *then* "authorized to transact business" in California.

The true situation hidden when the default was entered was vital. Under Code of Civil Procedure section 411, subdivision 6, summons must be served "In all cases where a corporation has forfeited its charter or right to do business in this state, . . . by delivering a copy thereof to one of the persons *who have become the trustees of the corporation and of its stockholders or members. . . ."* [Italics supplied.]

We hold that said subdivision 6 of section 411 was intended by the Legislature to be applicable to domestic and foreign corporations alike. Our reasons for reaching this conclusion are: Firstly, Code of Civil Procedure section 411 is the sole statutory authority expressly providing for service upon suspended corporations (as distinct from corporations dissolved—covered by Corp. Code, §§ 3305, 3306 as to domestic corporations—or, as to "withdrawn" foreign corporations, by Corp. Code, § 6504). Secondly, the entire section read in context covers both domestic and foreign corporations. Where different service requirements for domestic and foreign

corporations are contemplated (as in subds. 1 and 2) the adjectives "domestic" and "foreign" are used to distinguish such methods. No such differentiation is made in subdivision 6. Thirdly, if the provisions of the subdivision had been intended to be restricted to domestic corporations the phrase "in this state" would have been useless and meaningless; also the subdivision's language "In all cases where a corporation has forfeited its . . . right to do business . . ." has aptness to foreign corporations. As we have noted (see fn. 2) the Legislature in Revenue and Taxation Code section 23301 uses "forfeited" as having peculiar application to suspended *foreign* corporations. Fourthly, to construe subdivision 2 of said section 411 as having applicability to a suspended foreign corporation would lead to absurd results. Such service would seldom, if ever, bring notice of the pendency of the action—which is the purpose of service—to those interested in protecting the assets of the dormant corporation. Section 411, subdivision 2, especially made applicable to active foreign corporations, cannot reasonably be said to apply to suspended or charter-forfeited corporations. It by its terms points to Corporations Code sections 6500-6504. Briefly stated, those sections permit service on active foreign corporations by service upon the usual officers, the general manager or designated agent in this state, or in certain circumstances, upon the California Secretary of State. Not one of these persons is calculated to be one who would be likely to reach any of those actually interested. They are persons who were only interested in the going concern. The facts of the case before us illustrate graphically the ineffectuality of a section 411, subdivision 2 service. On the other hand, "one of the persons who have become the trustees of the corporation and of its stockholders . . ." *is* a person interested in the protection of the corporate assets.

Standard case law aids to statutory interpretation support our conclusions. Enumeration of these aids is unnecessary. (See 45 Cal.Jur.2d, Statutes, §§ 116, 117, pp. 625-627, and cases there cited.)

No effort was made in action No. 19901 to comply with section 411, subdivision 6. There is no showing that Robinson was a trustee. He is said to have been vice-president of Mt. Vernon. The constable's return does not certify that he was served in that, or any other, corporate capacity. It simply states: that the constable had served a copy of the summons and complaint "on Calernce (*sic*) I. (*sic*) Robinson, being the

Defendant named in said summons." We do not, however, base decision on that omission.[3] ■ Since the service of summons was made on a person not shown to be authorized to accept service for this suspended corporation, there was no showing the court had jurisdiction over the corporation. (Code Civ. Proc., § 416.) When the clerk acts there is no presumption that all of the necessary facts as to the service of summons have been made to appear. (*R. H. Herron Co.* v. *Westside etc. Co.*, 18 Cal.App. 778, 780 [124 P. 455].) "There is a marked difference between a default judgment entered by the court under subdivision 2 of section 585 [Code Civ. Proc.] and one entered by the clerk under the first subdivision of the section. . . . Having jurisdiction of the parties and of the subject matter of the litigation, any impropriety in the *court's* entry of judgment constituted, at most, but an erroneous exercise of jurisdiction. . . . However, where a clerk purports to enter a default and judgment prematurely, or otherwise exceeds the limited power conferred upon him by the statute, there is an entire absence of jurisdiction and his action . . . is a nullity and open to attack at any time." (*Baird* v. *Smith*, 216 Cal. 408, 412 [14 P.2d 749].) The clerk has no authority to enter the default of a defendant in the absence of valid proof of service of summons. (*Woods* v. *Stallworth*, 177 Cal.App.2d 517, 520 [2 Cal.Rptr. 250].) The clerk "can only enter judgment upon a default duly and regularly entered." (*Baird* v. *Smith, supra*, at p. 414.)

■ Even had the entry of default been proper (which, as shown, it was not) the clerk's default judgment for $6,343.26 was beyond his powers. As stated, Hammond, through his assignee, the collection agency, had sued for the *"reasonable value"* of legal services to the corporation. Such reasonable value was alleged to be $5,000. To determine the actual reasonable value, evidence had to be taken and judgment had to be exercised. Only the court may act judicially. It is only when the amount due is liquidated—a sum certain or one which can be made certain by mathematical calculation—that the clerk has power to enter judgment. When the clerk here

---

[3]On the face of the printed summons, a typewritten notice signed by the constable recites: "To Clarence I. Robinson: You are hereby served as vice president of Mount Vernon Mines of Nevada, a corporation." Although it has been held that it is to the affidavit or certificate that one looks for prima facie proof of adequate service (*Eclipse Fuel etc. Co.* v. *Superior Court*, 148 Cal.App.2d 736, 743-744 [307 P.2d 739]) whether a notice on the summons' face can cure a defective return is a question we need not, and do not, pass upon.

undertook, therefore, to enter judgment for $6,343.26 he exceeded his jurisdiction by at least $5,000. (*Lynch* v. *Bencini*, 17 Cal.2d 521, 525-528 [110 P.2d 662]; *Brown* v. *Superior Court*, 242 Cal.App.2d 519, 524 [51 Cal.Rptr. 633]; *Diamond Nat. Corp.* v. *Golden Empire Builders, Inc.*, 213 Cal.App.2d 283, 287 [28 Cal.Rptr. 616].) As is true of the entry of default, so also it is true that "there are no presumptions in favor of a *judgment* by a clerk." (Italics supplied.) (*Lynch* v. *Bencini, supra*, at p. 533; and see cases cited above.)

■ Where, as here, the clerk's default and the clerk's default judgment are both void on the face of the record, it is the *duty* of the trial court to set them aside *on its own motion*, regardless of when and how the invalidity is called to its attention. (*Thompson* v. *Cook, supra*, 20 Cal.2d 564, 569; *Baird* v. *Smith, supra*, 216 Cal. 408, 410; *Woods* v. *Stallworth, supra*, 177 Cal.App.2d 517, 520-521.) Since it was the duty of the court to set aside the clerk's void judgment on its own motion and without regard to when, how and by whom the matter is brought to the court's attention, the status of the plaintiffs here as having legal capacity to sue, individually or in a derivative capacity does not matter in this phase of the appeal.

### Re The Status of Mt. Vernon as a Party

Our holding that the judgment in action No. 19901 is void requires a reversal of the judgment in this action, No. 20601. Reversal entails a possibility of further proceedings. Guidelines are called for. So many possibilities exist we cannot anticipate all of them. Two can be stated with assurance. ■ Herein plaintiffs seek to quiet title to the real property in themselves as individuals. That is impossible. The effect of our holding already asserted is to nullify the judicial sale. Title to the real property is in the corporation. Its charter has been forfeited but that does not presently affect title to its property—however much said title may currently be encumbered. (See Nev.Rev.Stat. § 78.585, subd. 1; *O'Connell Gold Mines, Ltd.* v. *Baker*, 63 Cal.App.2d 384 [146 P.2d 967].) A second matter which can be asserted with certainty is that if Hammond wishes to prosecute his action against the Corporation either personally or via the collection agency he will have to obtain service on the corporation in the manner provided by law. ■ California law governs the manner of service upon a foreign corporation of an action properly commenced in this state. (See 23 Am.Jur., Foreign Corporations, §§ 297,

505; 16A Fletcher Cyc. Corp. (1962 Rev.) § 7998; 18 Fletcher Cyc. Corp. (1955 Rev.) §§ 8696, 8776.) The procedural machinery as we have stated is in Code of Civil Procedure section 411, subdivision 6, and section 416.

As regards the Nevada forfeiture of charter Nevada law will govern the subsequent rights, privileges and powers of the corporation to defend for the duration of the disability. (Rest., Conflict of Laws, § 158, p. 228; *Macmillan Petroleum Corp.* v. *Griffin*, 99 Cal.App.2d 523, 528 [222 P.2d 69]; *Fidelity Metals Corp.* v. *Risley*, 77 Cal.App.2d 377, 381 [175 P.2d 592].) ▮ Under Nevada Revised Statutes, section 78.585, subdivision 1, Mt. Vernon may, notwithstanding the forfeited charter, still prosecute and defend lawsuits to preserve the corporate property.[4] As regards the California suspension, California law governs. (See fn. 2.) (*Alhambra-Shumway Mines, Inc.* v. *Alhambra Gold Mine Corp.*, 155 Cal.App.2d 46, 50 [317 P.2d 649].) Applicable here is Revenue and Taxation Code section 23301. Provisions regarding domestic corporations are similar. *Boyle* v. *Lakeview Creamery Co.*, 9 Cal.2d 16 [68 P.2d 968], holds that defense of a lawsuit by suspended domestic corporation is prohibited. But in *Reed* v. *Norman*, 48 Cal.2d 338 [309 P.2d 809], the action involved was by a shareholder (the court called it a "derivative" action) for a wrong to the corporation in the nature of a fraudulent dissipation of corporate assets by the managing officers of a corporation. They, with the corporation, were named as defendants in the action. One of the defenses was that the corporations' right to engage in litigation had been suspended under Revenue and Taxation Code section 23301. Since the shareholder's action was derivative, it was urged the disability to defend extended to him. The court held the action could be maintained. It found the books and records of the corporation were in the hands of the mismanaging officers, that the corporation was a "necessary channel" through which the shareholder's interests must be protected. The court said (on p. 343) : "In such a case it is not equitable to permit section 23301 . . . to stand as a shield for protecting allegedly dishonest corporate officials. The

---

[4]Under Nevada law, upon the revocation of Mt. Vernon's charter, its directors became trustees of its property. (Nev. Rev. Stat. § 78.175, subd. 4; see 3 Witkin, Summary of Cal. Law (7th ed.), Corporations, § 113, subd. 4, pp. 2406-2407.) Provision is also made for court appointment of directors upon petition of shareholders. (Nev. Rev. Stat. § 78.345.)

corporation is not enjoying any of the privileges accorded to such entities; it is more analogous to the winding up of the business."[5] Reed cites a New York decision, *Weinert* v. *Kinkel*, 296 N.Y. 151 [71 N.E.2d 445, 446, 172 A.L.R. 688]. *Castner* v. *First Nat. Bank of Anchorage, supra*, 278 F.2d 376, is to the same effect. That ruling stresses the fiduciary duty owed by the officers and directors of corporations to the shareholders.

It is alleged by plaintiffs in the instant case that Hammond had full control of all of the books and records of the corporation that he had received all notices for it; that plaintiffs had requested Hammond to turn those books and records over to them which Hammond had refused to do; that Hammond had not told them and they knew nothing about the franchise taxes being due; that Hammond had not told them about the pendency of his lawsuit and they knew nothing about it; that plaintiffs had taken no part in the election of Robinson as vice-president and did not know he was vice-president. They allege that Hammond not only had been attorney for the estate, but also had been an officer of Mt. Vernon and its incorporating attorney. It is alleged, in fact, that such were the only services he had ever performed for the corporation. Implicit in the pleading is the charge that the suit, the default, the levy upon the real property (the corporation's sole asset), and the withholding by Hammond of knowledge of all of this were part of a scheme by Hammond to mulct the corporation of all its assets under the guise of the collection of a fee for services. These charges have not been proved; nor have the plaintiffs had the opportunity to prove them. For the benefit of the corporation, plaintiffs should have their day in court. To the extent that their action is derivative it will be for the benefit of the corporation. Plaintiffs are not the sole parties interested in the corporation. Creditors with priorities—and the States of Nevada and California with their tax claims undoubtedly occupy this status (see Rev. & Tax. Code, § 26161, Nev.Rev.Stats. § 78.175, subd. 5)—then the unsecured creditors, all must be taken care of before there can be a dissolution and distribution of assets to plaintiffs as shareholders.

This litigation is full of "ifs." Plaintiffs have sued Hammond for damages and for fraud. The action sounds in

---

[5]There is an alternate holding in the *Reed* case. We quote from page 344 of 48 Cal.2d: "It would thus seem that plaintiff, even assuming he could not maintain the action because of the suspension, should be given an opportunity of paying the taxes and reinstating the corporation."

tort. Presently defectively framed, an action, properly pleaded, could lie. Hammond, in this record, had denied that he was ever an officer of Mt. Vernon. On the other hand, it appears that he executed a recorded deed for the corporation as its secretary. He was certainly Mt. Vernon's attorney. ■ Corporate officers stand in a fiduciary relationship both to the corporation and its shareholders. (*Sequoia Vacuum Systems* v. *Stransky*, 229 Cal.App.2d 281, 286-287 [40 Cal. Rptr. 203]; 3 Fletcher Cyc. Corp. (1965 Rev.) §§ 838, 848.) Although shareholders are not ipso facto the clients of the attorney for a corporation (see *Meehan* v. *Hopps*, 144 Cal. App.2d 284, 293 [301 P.2d 10]) a fiduciary status may arise when a person voluntarily assumes a position of trust and confidence. (*Sime* v. *Malouf*, 95 Cal.App.2d 82, 98 [212 P.2d 946, 213 P.2d 788].)

■ A fiduciary relationship is not an indispensable element of a fraud action, although the existence of that relationship gives rise to special obligations. (See cases cited, *supra.*) The elements of actual fraud are codified. (Civ. Code, § 1710.)

The question of whether the corporation must be reinstated before a derivative suit can be maintained (see fn. 3) seems largely academic. It must be reinstated both in Nevada and California before it can do any business in this state. (Rev. & Tax. Code, § 23301). The real property is Mt. Vernon's sole asset and can neither be managed or disposed of without either reinstatement or a dissolution and winding up of the corporation. Either course will involve paying off the States of Nevada and California and the other creditors—of whom Hammond may, or may not, turn out to be one—before plaintiffs' rights can be reached. The party or parties who ultimately must bear some or all of the costs of reinstatement is another matter.

If, as plaintiffs allege, the proof establishes that Hammond did deliberately cause the suspension of Mt. Vernon's charter as a part of the scheme described above the costs of reinstatement (or winding up) would be an element of damages the court will consider in the fraud action.

If the corporation is reinstated by plaintiffs and is otherwise solvent, plaintiffs as sole shareholders will control it. Thus a derivative action no longer would be necessary. The corporation, already a party to action No. 19901 could continue to defend and could cross-complain. Similarly it can intervene in action No. 20601.

RE THE STATUS OF PLAINTIFFS AS INDIVIDUALS

". . . Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of the other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity." (*Sutter* v. *General Petroleum Corp.*, 28 Cal.2d 525 at p. 530 [170 P.2d 898, 167 A.L.R. 271].) If, however, damage has been done to the shareholders, peculiar to them, they can maintain an action for fraud individually for such damages. (See *Hagan* v. *Superior Court*, 53 Cal.2d 498, 503 [2 Cal.Rptr. 288, 348 P.2d 896].) On the present state of the record, we find it unnecessary to wrestle with the question whether the fact that plaintiffs are the sole shareholders, plus the fact that their allegations would indicate that devaluation of their shares is an incident to, and collection by Hammond of an excessive fee from them through the corporation the real purpose of, this litigation, should constitute an exception to the dictum quoted from the *Sutter* case. The necessity and effect of reinstatement (or a possible dissolution and winding up) of the corporation makes the assertion of further dictum by us in this action unwarranted.

A closing paragraph in fairness to Mr. Hammond is necessary. Excepting the irregularities of his attempted service of process and misuse of a clerk's judgment, there is no *proof* of actual wrongdoing. Even defective service and judgment may have been the product of unawareness of the law's requirements rather than malfeasance. Above we have mentioned that on the issue of a deliberate plan to overreach, plaintiffs have not had their day in court. Hammond has not had his either with respect to his defense of that charge on the merits.

The judgment is reversed. The trial court is directed to make its order declaring the default and default judgment taken in action No. 19901 vacated, also setting aside the judicial sale held pursuant to said judgment in action No. 19901 as null and void. Further proceedings in No. 19901 and No. 20601 may be had in accordance with the views expressed herein. The order denying a new trial is not appealable and the purported appeal therefrom is dismissed.

Friedman, J., and Regan, J., concurred.