JOHN W. MILLER, Plaintiff-Appellant, v. ROBERT L. BALFOUR, Defendant-Appellee.

Second District   No. 2—98—0583

Opinion filed February 26, 1999.

Michael D. Weis, of Northbrook, and Daniel L. Leadley, of Solomon, Leadley & Associates, of Aurora, for appellant.

Peter M. Storm and Stephen M. Cooper, both of Law Offices of Cooper & Storm, of Geneva, for appellee.

JUSTICE RAPP delivered the opinion of the court:

Plaintiff, John W. Miller, appeals from an order entered April 13, 1998, granting the petition of defendant, Robert L. Balfour, to vacate a summary judgment order pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1996)). The summary judgment order granted plaintiff's petition to register a clerk's default judgment from the State of California. The decision of the trial court granting defendant's motion to vacate the summary judgment order found that the California judgment was void because it violated California law and, therefore, was not entitled to full faith and credit in the State of Illinois. On appeal, plaintiff argues that the doctrine of *res judicata* barred defendant from attacking the validity of the California judgment and that the trial court erred in finding that the California judgment was void. We affirm.

The facts presented are gleaned from affidavits and sworn pleadings, as there was no evidence taken. Both parties to this appeal are attorneys, plaintiff in California and defendant in Illinois. The issues created in this appeal began late in 1989 when plaintiff from California contacted defendant in Illinois seeking a financial relationship to purchase certain real estate in California to develop and resell for profit. Based upon plaintiff's solicitations, defendant sent $150,000 by wire. According to defendant, plaintiff executed a promissory note to defendant for $112,500, representing 50% of defendant's investment and a preferred return on investment. The trial court record indicates that no formal written agreement was ever entered into by these attorneys defining their relationship or responsibilities to each other in this apparent business transaction. Whatever the exact arrangement was, it failed as a successful investment.

On September 15, 1994, plaintiff filed a lawsuit in the superior court of the State of California, Ventura County. The complaint contained four counts: count I for breach of contract; count II for breach of partnership; count III for declaratory relief; and count IV for contribution. Each count sought damages of $400,000. Defendant was served with summons in Illinois on December 2, 1994. The California summons indicated that defendant had 30 days to file a written response. Although the summons was issued on September 15, 1994, it was not delivered to the sheriff of Kane County, Illinois, for service until November 16, 1994.

During this period of time, plaintiff sent a letter to defendant seeking a settlement where both parties would agree that neither owed the other any money. An agreement was enclosed that was already signed by plaintiff and dated November 3, 1994. On November 20, 1994, defendant purportedly signed, dated, and sent the settle-

ment agreement back to plaintiff with a cover letter stating, "If you do not follow through and dismiss with prejudice I will proceed accordingly on the assumption you wish to continue your fraudulent conduct." Plaintiff, by affidavit, denies ever receiving the settlement agreement.

On December 5, 1994, plaintiff purportedly sent defendant a facsimile transmission cover sheet with the following message:

"We have nothing to discuss regarding the lawsuit. Please sign the settlement agreement and return it to me and cancel the 'note' and I will dismiss the lawsuit. I don't want to have any claim against me now or in the future from you saying I owe you any money for anything or from someone else claiming I owe money on the 'note.' "

On January 3, 1995, defendant, as indicated by his affidavit, transmitted via facsimile an answer and counterclaim to the clerk of the California court. Apparently, the court clerk did not accept the documents for filing because the documents lacked a proof of mailing. Defendant claims he was never informed of the rejection of his responsive pleadings.

On January 24, 1995, plaintiff obtained a default judgment, entered by the clerk of the court, against defendant in the amount of $400,000 in damages, $41,972.60 in interest, and $204 in recoverable costs. The default judgment does not indicate on which claim it was entered, and the judgment was never presented to a judge for approval. Defendant denies receiving notice of plaintiff's intent to obtain a default judgment. California law apparently does not require the plaintiff to send the defendant notice that a default judgment has been entered.

On July 17, 1996, plaintiff filed a petition for registration of foreign judgment in Kane County, Illinois. In that petition, plaintiff sought to register the California default judgment against defendant. A certified copy of that default judgment was attached to the petition.

On August 16, 1996, defendant filed an objection to plaintiff's petition for registration of foreign judgment. Among other allegations, defendant set out the history of the proceedings recited above and challenged the personal jurisdiction of the California court. In his objection, defendant, under oath, reiterated his contact with the California court clerk on the proper procedures for filing his answer and counterclaim. Defendant states that he filed those documents and served copies on plaintiff's counsel. Defendant further stated that he was contacted by plaintiff's insurance carrier regarding the counterclaim.

The trial court allowed the parties to respond to each other's

briefs and arguments. Plaintiff then filed a motion for summary judgment and scheduled it for hearing on December 2, 1996. On that date, the court gave defendant until January 15, 1997, to file his response to the motion for summary judgment. On January 28, 1997, the hearing on the motion for summary judgment was rescheduled for March 4, 1997. The order indicates that both defendant and plaintiff's counsel were present in court.

On March 4, 1997, plaintiff appeared and argued his motion for summary judgment. Neither defendant nor his counsel appeared. The court granted summary judgment and allowed the registration of the California judgment pursuant to the Uniform Foreign Money-Judgments Recognition Act (735 ILCS 5/12—618 *et seq.* (West 1996)). The order entered on that date stated that the judgment "for $442,176.60 is recognized as a valid judgment by this court and fully enforceable in Illinois."

Plaintiff then sought to recover on this judgment and on April 3, 1997, a citation notice was filed setting a court date of May 13, 1997, for hearing. On that date, a citation to discover assets was filed, as well as a return of service showing service on defendant on April 29, 1997. The citation proceedings were continued to June 17, 1997, and on that date dismissed in an agreed order.

On November 6, 1997, plaintiff filed a motion seeking leave to commence further supplementary proceedings. On that same date, an *ex parte* order was entered granting plaintiff leave to commence further supplementary proceedings. At this point, plaintiff alleged that the judgment had grown to $557,552.14 with interest to December 1997.

On February 6, 1998, with the citation proceedings reinstated, defendant filed his section 2—1401 (735 ILCS 5/2—1401(West 1996)) petition to vacate the order granting plaintiff's motion for summary judgment and all supplementary proceedings flowing from the judgments. In his petition to vacate, defendant recites that he missed the March 4, 1997, hearing on the summary judgment because he had scheduled it in his book for April 4, 1997, and had appeared on that date only to find that the case had not been scheduled for April 4. Defendant contends that he first learned of the registration of the foreign judgment when he was served with the citation proceedings. Defendant further contends that on June 11, 1997, plaintiff, defendant, and other third parties entered into a further written settlement agreement that, among other things, required plaintiff to dismiss this action and to vacate the underlying California clerk's default judgment. Plaintiff argued that defendant had breached the subsequent settlement agreement.

On April 13, 1998, after considering the oral arguments of counsel, the pleadings, exhibits, and authorities cited by the parties, the trial court found that the California clerk's judgment was void because it was entered by a clerk "in contravention of section 585 of the California Code of Civil Procedure" (Cal. Civ. Proc. Code § 585 (West 1993)). The trial court thereafter granted defendant's section 2—1401 petition to vacate plaintiff's summary judgment and dismissed the proceedings with prejudice, including the citation to discover assets. On May 6, 1998, plaintiff filed his notice of appeal.

We note that during the pendency of this appeal plaintiff filed a motion for an *ex parte* order with the California court seeking to have the clerk's judgment entered by the court *nunc pro tunc*. The California court denied plaintiff's motion, simply stating "There was no 'clerical' error." Defendant contends that the California court, with the knowledge that Illinois had ruled the judgment to be void, refused to grant plaintiff's request. Defendant argues that the California court's ruling may be reasonably interpreted to indicate that the defect in the clerk's judgment is substantive and not subject to being cured by a motion to modify it, *nunc pro tunc*. Plaintiff argues that the California court's ruling may be interpreted as meaning that the original judgment was valid as far as the California court is concerned. The California court did not give an explanation in its order denying plaintiff's motion, and we decline to speculate on the reason for the California court's decision.

On appeal, plaintiff contends that the trial court's granting of the summary judgment fully adjudicated the validity of the California judgment and, therefore, the doctrine of *res judicata* barred defendant from further attacking the validity of the California judgment in his section 2—1401 petition. We disagree with plaintiff.

We begin our discussion by noting that both plaintiff's and defendant's briefs fail to comply with Supreme Court Rule 6 (145 Ill. 2d R. 6). Rule 6 requires citation of cases to include the page of the volume where the case begins and the pages upon which the pertinent matter appears. None of plaintiff's citations include the page number upon which the pertinent matter appears. Defendant's citations to California cases failed to include the page numbers upon which the pertinent matter appears. We admonish both parties for failing to comply with supreme court rules.

■ The doctrine of *res judicata* holds that "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and as to them, it constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Sobina v. Busby*, 62 Ill.

App. 2d 1, 17 (1965). However, the doctrine of *res judicata* is not applicable where a judgment is void (*Ottwell v. Ottwell*, 167 Ill. App. 3d 901, 909 (1988)), and void judgments are always subject to collateral attack for lack of jurisdiction or fraud (*In re Marriage of Verdung*, 162 Ill. App. 3d 374, 389-90 (1987)). Jurisdiction involves not only the power to hear and determine a given case but also the power to grant the particular relief requested, and every act of the court beyond its jurisdiction is void. *People ex rel. Brzica v. Village of Lake Barrington*, 268 Ill. App. 3d 420, 423 (1994).

Plaintiff acknowledges the rule that a void judgment, order, or decree may be attacked at any time or in any court, either directly or collaterally, without any showing of diligence or a meritorious defense. *Evans v. Corporate Services*, 207 Ill. App. 3d 297, 301 (1990). However, plaintiff questions how many times defendant may challenge the validity of the California judgment based upon facts known to defendant and the court at the time of the hearing on plaintiff's motion for summary judgment. Plaintiff acknowledges in his brief that defendant's objections to the motion for summary judgment challenged the personal jurisdiction of the California court but did not challenge the California court clerk's power to enter the default judgment. Thus, the trial court never had the opportunity to consider the issue of the California clerk's authority to enter the default judgment at the time of the hearing on plaintiff's motion for summary judgment, at which hearing defendant was not present.

■ Because the doctrine of *res judicata* is not applicable where a judgment is void, and a void order may be attacked at any time and in any court, we find that the doctrine of *res judicata* did not operate to bar defendant from challenging the validity of the California judgment in his section 2—1401 petition to vacate the summary judgment.

■ We next examine whether the trial court erred in concluding that the California judgment was void. We first note that plaintiff's brief fails to comply with Supreme Court Rule 341(e)(3) (177 Ill. 2d R. 341(e)(3)). Plaintiff failed to include the applicable standard of review with citation to authority. The decision of the trial court to grant a section 2—1401 petition to vacate lies within the sound discretion of the trial court, and the reviewing court is justified in disturbing judgment only if it finds that the trial court abused its discretion. *Sakun v. Taffer*, 268 Ill. App. 3d 343, 354 (1994).

■ A void judgment or order is one that is entered by a court lacking jurisdiction over the parties or the subject matter, or lacking the inherent power to enter the particular order or judgment, or where the order was procured by fraud. *Evans*, 207 Ill. App. 3d at 302. We note that plaintiff frankly admits in his brief that the validity of the

California judgment "may be a close question" and that "[r]easonable minds might differ."

■ "Under the Federal Constitution a judgment rendered by a court of a sister state must be given full faith and credit by the courts of other states." *Sobina*, 62 Ill. App. 2d at 6. "Where a court has jurisdiction of the parties and the subject matter, its judgment regularly entered, even though erroneous, is valid until reversed on appeal and cannot be subject to collateral attack in another state." *Sobina*, 62 Ill. App. 2d at 6. Nevertheless, when asked to register a foreign judgment, a court may inquire into the proceedings of the rendering court of a sister state to determine whether such court had jurisdiction of the subject matter and of the parties. *Evans v. Advance Schools, Inc.*, 70 Ill. App. 3d 947, 950 (1979). "If this inquiry reveals an error which would *** render the foreign judgment void according to the law of the foreign State, *** the foreign judgment has no constitutional claim to full faith and credit." *Advance Schools, Inc.*, 70 Ill. App. 3d at 950.

■ As noted above, jurisdiction involves not only the power to hear and determine a given case but also the power to grant the particular relief requested, and every act of the court beyond its jurisdiction is void. *People ex rel. Brzica*, 268 Ill. App. 3d at 423. Section 585(a) of the California Code of Civil Procedure authorizes a clerk to enter a judgment after the entry of a defendant's default without a court hearing or judicial action in "an action arising upon contract or judgment for the recovery of money or damages only." Cal. Civ. Proc. Code § 585(a) (West 1993). Other actions require application to the court for the relief demanded in the complaint, and the court may render judgment after hearing evidence offered by the plaintiff. Cal. Civ. Proc. Code § 585(b) (West 1993).

California courts have strictly construed section 585(a) to apply only to contracts that provide for some definite fixed amount of damages ascertainable from the contract sued on or from the terms of which a certain computation may be made by the clerk. See *Liberty Loan Corp. v. Petersen*, 24 Cal. App. 3d 915, 918, 101 Cal. Rptr. 395, 396 (1972). If the determination of damages involves the exercise of discretion or the taking of evidence, the clerk has no power to enter judgment. *Brown v. Superior Court*, 242 Cal. App. 2d 519, 523, 51 Cal. Rptr. 633, 636 (1966). Furthermore, if there is any uncertainty as to the amount due, the court clerk has no authority to resolve the issue and a court hearing is required. See *Liberty Loan Corp.*, 24 Cal. App. 3d at 919, 101 Cal. Rptr. at 397.

A clerk cannot enter a default judgment in an action requiring any sort of accounting. See *Liberty Loan Corp.*, 24 Cal. App. 3d at 918, 101 Cal. Rptr. at 396. Where a breach of contract claim is simply used as

an alternative legal theory for recovery on a claim that otherwise would not qualify for a clerk's default judgment, the clerk lacks authority to enter a default judgment even on the contract claim. See *Brown*, 242 Cal. App. 2d at 525, 51 Cal. Rptr. at 636. Where the contract claim is separate and distinct from other claims that are joined with the contract claim, the clerk can only enter a default on the contract claim. See *Norman v. Berney*, 235 Cal. App. 2d 424, 430, 45 Cal. Rptr. 467, 462 (1965). Where a clerk entering a default judgment exceeds the limited power conferred by statute, there is an entire absence of jurisdiction and the clerk's action is a nullity and open to attack at any time. *Lewis v. LeBaron*, 254 Cal. App. 2d 270, 276, 61 Cal. Rptr. 903, 908-09 (1967).

Plaintiff argues that his complaint states a separate cause of action for breach of contract (count I), and that the clerk could properly enter the default judgment on the breach of contract claim despite the existence of other causes of action. Plaintiff further states that it can be fairly presumed that the default judgment was entered based upon the breach of contract action (count I).

■ Defendant argues that plaintiff attempted to disguise count I of his complaint as a breach of contract claim, when his complaint is really a declaratory action to determine the existence of a partnership and a request for an accounting. Therefore, defendant argues, plaintiff's action is not for a fixed or determinable amount and the clerk was without lawful authority to enter a default judgment. We agree with defendant.

For purposes of this analysis, we will assume *arguendo*, as requested by plaintiff, that the default judgment was based upon the breach of contract action (count I), the only action upon which the clerk would have had the authority to enter default judgment under section 585(a). Having reviewed plaintiff's complaint, we agree with defendant that plaintiff's breach of contract claim was simply used as an alternative legal theory for recovery on a claim that otherwise would not qualify for a clerk's default judgment and that the clerk lacked authority to enter a default judgment even on the breach of contract claim. See *Brown*, 242 Cal. App. 2d at 525, 51 Cal. Rptr. at 636.

Plaintiff's complaint pleads damages in the amount of $400,000, which, according to plaintiff, includes $360,000 loss of equity in certain real estate and $40,000 of unspecified loss. Plaintiff admits in his brief that the $40,000 unspecified loss is problematic but argues that this amount is the sum total of all "credits and debits of the partnership," and that the amount due and owing under the oral contract is $400,000 "when all losses of the development contract are counted."

Plaintiff thus argues that the damages were ascertainable by the clerk without adjudication and without use of discretion. We disagree with plaintiff.

The clerk lacks authority to enter a default judgment for an amount to which plaintiff may not be entitled. *Crossman v. Vivenda Water Co.*, 136 Cal. 571, 574, 6 P. 220, 222 (1902). There are no facts alleged in plaintiff's complaint from which the clerk could have determined the losses of the partnership. Additionally, any loss in equity of real estate necessarily would have required the clerk to make a determination of the fair market value of the real property which, according to plaintiff's complaint, apparently was not partnership property. Furthermore, plaintiff's complaint admits that losses were to be shared equally between the partners; thus, plaintiff would have only been entitled to recover half of the loss in equity of the real estate and half of the other losses of the partnership. Under these circumstances, we believe that the California clerk lacked authority to enter a default judgment for the relief sought by plaintiff. Accordingly, we find no abuse of discretion on the part of the trial judge in granting section 2—1401 relief, and we hold that the trial court properly found the California default judgment void and not entitled to full faith and credit in the State of Illinois.

Defendant's brief also argues that the circuit court's decision may be upheld based on other grounds offered by defendant. Defendant contends that the California judgment was procured by fraud and, thus, it was void and subject to being attacked at any time. Defendant also argues that the only type of foreign judgment entitled to full faith and credit in Illinois is a "judgment, decree, or order of a *court*" (emphasis added) (735 ILCS 5/12—651 (West 1996)), not a judgment merely entered by a "clerk." Because we find that the California judgment was not entitled to full faith and credit due to the clerk's lack of authority to enter a default judgment for the relief sought by plaintiff, we need not address these issues. Specifically, we are not determining whether a "clerk's" default judgment is entitled to full faith and credit in Illinois.

For the foregoing reasons, we affirm the decision of the circuit court of Kane County.

Affirmed.

INGLIS and GEIGER, JJ., concur.