[Civ. No. 22067.   First Dist., Div. Two.   June 28, 1965.]

ERNEST EUGENE NORMAN, Plaintiff and Respondent, v. RAY BERNEY, Defendant and Appellant.

Stewart & Tuttle, William H. Tuttle and W. K. Stewart for Defendant and Appellant.

Weingarten, Girard & McGinty and Irwin B. Rosenstein for Plaintiff and Respondent.

BRAY, J.*—Defendant Ray Berney appeals from an order denying his motion to set off judgment.

### QUESTIONS PRESENTED

1. Was the default judgment in *Handley* v. *Norman* valid?

2. Did Weingarten acquire an interest under the contingent fee agreement which diminished or defeated defendant Berney's right to set off the Handley judgment?

3. Is defendant Berney entitled to set off the Handley judgment or portion thereof against the Norman judgment?

### RECORD

On August 6, 1962, T. H. Handley commenced action number 53641 in the Superior Court of Monterey County against

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Ernest E. and Emma Jean Norman. The complaint, entitled "Foreclosure," alleged that Handley, Marina Plumbing and Hardware, Inc. (hereafter referred to as "Marina"), and George J. Turner, had all furnished materials or services and materials in connection with improvements located on certain real property owned by the Normans: Handley, materials reasonably valued at $5,798.23, Marina, services and materials reasonably valued at $1,160.44, and Turner, services and materials reasonably valued at $1,388.97; that, in each instance said materials or services and materials had been furnished at the request of the Normans "and for which they orally and expressly, and also impliedly, agreed to pay" $5,798.23 to Handley, $1,160.44 to Marina, and $1,388.97 to Turner; that no payment therefor had been received; that claims of lien had been filed with the Monterey County Recorder against the Normans' real property; that Marina and Turner had assigned all rights and claims arising out of these facts to Handley.

The prayer of the complaint was that Handley be adjudged and decreed to have a lien upon the Normans' real property; that such lien be foreclosed and the property sold to satisfy said lien; that Handley be allowed to bid at such sale; that personal judgment be entered against the Normans for the amounts of money specified in the body of the complaint; and that all right, title and interest of either of the Normans to the real property be foreclosed.

Summons and complaint were served upon Emma Jean Norman, and upon Ernest E. Norman.

On March 5, 1963, the mechanics' liens claimed under the Handley complaint were extinguished when the holder of a second deed of trust on the Normans' real property foreclosed.

On March 29, 1963, neither of the Normans having appeared or answered the complaint, the clerk, at Handley's request, without entering a default, filed and entered a default judgment in the amount of $8,834.58 in favor of Handley and against the Normans jointly and severally.

Meanwhile, on October 2, 1962, Ernest E. Norman entered into a written contract whereby the law firm of Twohig, Weingarten and Haas agreed to "undertake the case of *Norman v. Berney* on a one-third contingent basis, with no fee in the event of no recovery, 50% in event of appeal." On July 1, 1963, said law firm having dissolved, all rights under the contingent fee contract were assigned to Saul M. Weingarten.[1]

---

[1]For convenience this contract will hereinafter be referred to as the Weingarten contract.

Pursuant to said contract, Weingarten represented Ernest E. Norman in action number 54388 in the Superior Court of Monterey County against Ray Berney and Ray Berney Associates. On October 9, 1963, judgment was entered in favor of Norman against both defendants in the amount of $8,651.53. On December 10, 1963, defendant Ray Berney filed notice of appeal from the judgment.[2]

Thereafter, on December 31, 1963, defendant Berney purchased from T. H. Handley the judgment against the Normans in action number 53641. Berney paid $2,500 for said judgment and received a written assignment thereof executed by Handley. Handley subsequently divided the $2,500 between himself, Marina and Turner in exact proportion to the claims which each had asserted in action number 53641.

On January 20, 1964, defendant Berney filed in action number 54388 a notice of motion to set off the Handley judgment against the judgment in favor of Ernest E. Norman. In support of said motion, Berney filed the declaration of his attorney, W. K. Stewart, averring that on October 9, 1963, judgment in the amount of $8,651.53 was entered in favor of Ernest E. Norman against Ray Berney; that on March 29, 1963, judgment in the amount of $8,834.58 was entered in favor of T. H. Handley against Ernest E. Norman; that on December 31, 1963, T. H. Handley, ''for good and lawful consideration,'' assigned the latter judgment to Ray Berney, ''and the said T. H. HANDLEY has no further interest in said Judgment and the said RAY BERNEY is the real and beneficial owner of the said Judgment and that the said RAY BERNEY is not holding the said Judgment . . . for collection, or as trustee for another or for another's benefit, but is holding it for his own benefit''; that said judgment ''is a good, valid and outstanding Judgment against the said ERNEST E. NORMAN and is not subject to any defenses in law or equity.'' A copy of the written assignment of the Handley judgment was attached to the declaration as an exhibit.

During the course of the hearing on the motion to set off, John Thompson, the attorney who represented Handley in action number 53641, testified that his client had received verbal assignments of the Marina and Turner claims prior to commencing that action, but had paid nothing for said assignments, which were made for purposes of collection only. He admitted that at the time Handley assigned the judgment to

---

[2] On February 4, 1964, defendant Berney filed a dismissal of his appeal from the judgment in favor of Ernest E. Norman.

Berney, Handley was the beneficial owner of only a portion of said judgment and held the remainder as an assignee for purposes of collection. It was for this reason that Handley paid Marina and Turner their proportionate shares of the $2,500 which he received for the assignment. At the time the assignment was made, Handley had written the judgment off for income tax purposes, and Thompson had discarded most of his files pertaining to the case because he considered it closed. Berney's attorney, W. K. Stewart, testified that his client purchased the judgment for his own benefit and was not acting on behalf of anyone else. There was no evidence that Berney was aware of the contingent fee contract between Norman and Weingarten at the time he purchased the Handley judgment. His attorney, Stewart, in response to questioning by the court, offered to swear under oath that he had no knowledge of the contingent fee contract.

The court made findings of the facts hereinbefore set forth, and concluded that the default judgment in 53641 was void; that Handley was an assignee for collection and that Berney, as Handley's assignee, could take no greater rights than his assignors, and was an assignee for collection; that Weingarten acquired an equitable ownership interest in one-third of the 54388 judgment, and his interest was not subject to setoff; that Handley had ceased to pursue and had abandoned his judgment and that the assignment by him to Berney was void; and that the motion to set off should be denied.

Order was entered accordingly.

1. *The default judgment.*

The ground upon which the court found that the default judgment was void was that the clerk had no power to enter it because (a) the clerk failed to enter default before entering the default judgment, and (b) the action was not an action upon a contract for the recovery of money and damages only.

■ (a) The failure of the clerk to enter default before entering the judgment did not affect the validity of the judgment. It is settled that a valid default judgment may be rendered by the *court* even though no formal default has been entered. (*Crouch* v. *H. L. Miller & Co.* (1915) 169 Cal. 341, 345-346 [146 P. 880]; *Drake* v. *Duvenick* (1873) 45 Cal. 455, 462-463.) As said in the latter case, ''The only purpose of a default is to limit the time during which the defendant may file his answer, and that time never extends beyond a trial and judgment'' (p. 463). We can see no good reason

why a judgment entered by the clerk should be any different in this respect from one entered by the court.

■ (b) The court's determination that action number 53641 was not for the recovery of money and damages and hence a default judgment could not be entered by the clerk is likewise erroneous. Code of Civil Procedure, section 585, provides in pertinent part that the clerk may enter judgment "[i]n an action arising upon contract for the recovery of money or damages only."

The Handley complaint, while it was entitled "Foreclosure," sought other relief as well as foreclosure of mechanics' liens. ■ The title or designation of a complaint does not determine the character of the action. (*Zumwalt* v. *Hargrave* (1945) 71 Cal.App.2d 415, 418 [162 P.2d 957].) In addition to setting forth the necessary allegations for foreclosure and that the amounts sought were the reasonable value of the materials furnished and services rendered, the complaint alleged that the Normans orally and expressly agreed to pay plaintiff and his assignors the specific sums claimed for the materials and services. The prayer, in addition to asking foreclosure, also asked for personal judgment against the defendants.

■ There can be no doubt that it was proper for Handley to plead this alternative contractual theory of recovery. Materialmen and subcontractors who are lien claimants have two remedies which may be pursued simultaneously and are entitled to proceed against the property for the full amount of their liens and to proceed in the same action to obtain a separate personal judgment against those persons personally liable for their respective debts notwithstanding the lien. (See Code Civ. Proc., § 1200; *Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, 468 [37 Cal.Rptr. 548].)

■ Where a complaint states two or more causes of action and one of said causes falls within the purview of section 585, the clerk properly may enter a default judgment on that cause even though he has no authority to do so on the other cause. In *Diamond Nat. Corp.* v. *Golden Empire Builders, Inc.* (1963) 213 Cal.App.2d 283 [28 Cal.Rptr. 616], the complaint was in two counts. The first count was on an open book account for goods sold at an agreed price; the second count was for the reasonable value of the goods sold. The clerk entered default judgment. On appeal, it was held that as the first count alleged a cause of action for a sum certain fixed by contract, the clerk was authorized under section 585 to enter default judgment even though he would not have

been authorized to enter judgment under the reasonable value count. The reviewing court said: "The complaint stated but one cause of action in two counts. The allegations of the second count of the complaint wherein plaintiff sues for 'the reasonable value' of goods sold would not permit the taking of a clerk's judgment. (*Lynch* v. *Bencini, supra,* p. 525 [17 Cal.2d 521 (110 P.2d 662)]. The first count, however, as we have shown, was for a fixed and definite sum ascertainable from the contract. There were two counts, but only one cause of action. Where one of the counts justifies the clerk's judgment for the amount in which judgment was entered, the fact that another count is included under which the identical amount is prayed for, but upon a theory requiring evidence to be taken, does not destroy the validity of the clerk's judgment. (*Fallon & Co.* v. *United States Overseas Airlines, Inc., supra,* pp. 551-552 [194 Cal.App.2d 546 (15 Cal.Rptr. 354)].)'' (P. 289.)

▮▮ Plaintiff would distinguish Diamond on the ground of the statement there that the complaint stated but one cause of action in two counts. In our case, there was but one cause of action—the recovery of money for materials supplied and services rendered. The matter of foreclosure and personal judgment dealt with the methods of recovery but the fundamental cause of action is the same.

The Handley complaint, setting forth as it does a cause of action predicated upon oral agreements with each of the lien claimants to pay fixed and definite amounts, brings the action within the scope of section 585, Code of Civil Procedure. It therefore follows that the clerk had authority to enter a personal judgment against the defaulting defendants for the amounts alleged and prayed for.

▮▮ As pointed out in *Lynch* v. *Bencini* (1941) 17 Cal.2d 521 [110 P.2d 662], the clerk may not enter judgment where evidence is necessary to disclose the correct amount nor when discretion must be exercised. ▮▮▮ No such situation existed in the case at bench. Even though the action, being for foreclosure of a mechanic's lien, is a proceeding in equity (see 32 Cal.Jur.2d, Mechanics' Liens, § 114, p. 742), the cause of action upon which the judgment was entered was one in law —for a money judgment.

The cases cited by plaintiff are not in point. In *Farrar* v. *Steenbergh* (1916) 173 Cal. 94 [159 P. 707], the clerk entered a default judgment on a cross-complaint charging fraud, which judgment ordered a note and mortgage cancelled,

rescinded a sale of real property, and return of the down-payment on the sale. Obviously such a judgment was beyond the power of the clerk.

In *Kittridge* v. *Stevens* (1860) 16 Cal. 381, although the court expressed without discussion some doubt on the authority of the clerk to enter default judgment on a promissory note in an action seeking to declare a lien upon real property for the amount of the note, the court did not pass upon the validity of the clerk's judgment, saying that its validity was not being questioned.

*Landwehr* v. *Gillette* (1917) 174 Cal. 654 [163 P. 1018], held that the clerk has no authority to enter a judgment for attorney's fees on a promissory note providing for reasonable attorney's fees, because the determination of what are reasonable attorney's fees is a judicial and not a ministerial matter.

The clerk's judgment here was solely one for a money judgment and not for foreclosure.

### 2. *The contingent fee agreement.*

The Weingarten contract with Norman provided for the representation of Norman by Weingarten in an action brought by Norman against the Berneys, for which representation Weingarten was to receive a contingent fee. There is no language in the contract indicative of an intent to create a lien upon or equitable assignment of any portion of a judgment which Weingarten might obtain on Norman's behalf.

While there is no finding that defendant Berney had notice, actual or constructive, of the conditional fee agreement, there is no evidence that defendant did, nor that he should have known of it. In a discussion with the court, defendant's attorney, who was representing him at the time of the assignment of the Handley judgment against Berney, offered to testify under oath that he had no knowledge of it.

■ It is well established under the law of this state that an attorney has neither a retaining nor charging lien for compensation on a judgment secured by his services in the absence of a contract containing an agreement for such a lien. (1 Witkin, Cal. Procedure (1954) Attorneys, § 25, pp. 30-32; *Jones* v. *Martin* (1953) 41 Cal.2d 23, 27 [256 P.2d 905]; *Wagner* v. *Sariotti* (1943) 56 Cal.App.2d 693, 697 [133 P.2d 430].) ■ Although the parties may create a lien without using the word "lien" in their contract, the decisive question in each case is whether the parties have contracted that the lawyer is to look to the judgment he may obtain as security for his fee. (*Wagner* v. *Sariotti, supra,*

at p. 697.) ▮▮▮ Since a contract of this nature is nearly always drafted by the attorney, it must be construed most strongly against him and in favor of the client. (1 Witkin, Cal. Procedure (1954) Attorneys, § 26, p. 32; *Boardman* v. *Christin* (1924) 65 Cal.App. 413, 418-419 [224 P. 97].)

▮▮▮ The contract between Norman and Weingarten is conspicuously lacking in any language indicative of an intent to create a lien upon or an equitable assignment of a portion of any judgment which Weingarten might obtain on Norman's behalf. The contract in question makes no mention of the word "judgment" and provides only that Weingarten agrees to undertake the case "on a one-third contingent basis, with no fee in the event of no recovery, 50% in event of appeal." Even if this court were not required to construe the contract in favor of the client, this language furnishes no logical basis for the creation of any lien on the judgment. The use of the word "recovery" is of particular significance. In *Dalzell* v. *State Bar* (1936) 6 Cal.2d 433 [57 P.2d 1300], the attorney's contract of employment provided that he would "collect" certain interests for his clients in return for 25 per cent "of the *amount recovered*," which he was authorized to deduct from "the *amount of recovery*." The court held that the contract could only be interpreted to warrant the attorney's retention of 25 per cent "of the amount collected by or realized for his clients" (p. 438). Under the circumstances in our case, it is apparent that any interest which Weingarten acquired under his contract with Norman would attach only to the actual proceeds realized by his client.

▮▮▮ " 'A contingent fee agreement vests the attorney with an equitable interest in that part of the client's cause of action which is agreed upon as the contingent fee. This proposition may be given practical effect by ... ruling that neither the client nor the opposite party, *if the latter has knowledge of the attorney's rights under the contingent fee agreement*, can so compromise the litigated subject matter as to defeat the attorney's rights.' " (*Jones* v. *Martin* (1953) 41 Cal.2d 23, 27 [256 P.2d 905], quoting from 6 Cal.Jur.2d, Attorneys at Law, §197; italics added.) There is no such knowledge in our case.

▮▮▮ Since a judgment is clearly subject to setoff in certain instances and since there was no evidence that Berney was aware of the Weingarten-Norman contract when he purchased the Handley judgment and moved to set the same off against the Norman judgment, it follows that Berney's right

434

to obtain the setoff was not diminished or defeated by any prior right on the part of Weingarten. The assignment of a thing in action is without prejudice to any setoff existing at the time of, or before, actual notice of the assigment. (*Luders* v. *Pummer* (1957) 152 Cal.App.2d 276, 278-279 [313 P.2d 38].)

*3. Berney's right to setoff.*

When a debtor recovers a money judgment against his creditor or acquires a third person's judgment or any other claim against that creditor, the debtor may use the claim as an offset, satisfying in whole or in part the judgment his creditor has against him. One method of asserting such right is by motion of the debtor in the action in which judgment has been given in favor of the creditor. (3 Witkin, Cal. Procedure (1954) Enforcement of Judgment, § 73, pp. 2036-2037.)

However, the courts have recognized certain limitations on the right to obtain setoff. In *Harrison* v. *Adams* (1942) 20 Cal.2d 646, 649-650 [128 P.2d 9], the court held that a debtor may not set off a judgment or claim which he holds merely as an assignee for purposes of collection. Since mutuality is essential, the debtor must be the beneficial owner of the claim or judgment which he seeks to set off and not merely a trustee on behalf of an assignor who has retained the equitable interest in the thing assigned. It is also the rule that an assignor who is not the beneficial owner of the thing assigned can convey no better right, title or interest to his assignee, who is subject to the same defenses as the assignor. (*Embassy Realty Associates, Inc.* v. *Southwest Products Co.* (1954) 126 Cal.App.2d 725, 730-731 [272 P.2d 899].) The assignee of a judgment is deemed to have notice of all matters disclosed by the record and proceedings in the action in which the judgment was rendered. (*Hobbs* v. *Duff* (1863) 23 Cal. 596, 626.)

In the instant case, the trial court found that Handley, Berney's assignor, was the beneficial owner of the judgment against the Normans to the extent of $6,450. Since Berney paid a good and valuable consideration for the assignment of the Handley judgment and acquired the same on his own behalf, there is no reason why Berney could not set off that portion of the judgment commensurate with Handley's beneficial interest therein against the judgment in favor of Ernest E. Norman.

The remaining portion of the judgment against the Normans was held by Handley as the assignee for collection of Marina and Turner, who had retained equitable interests therein. Since Berney was charged with knowledge of all matters disclosed by the record in action number 53641, and, in any event, could acquire no greater right by virtue of the assignment than that possessed by Handley, it would appear that he did not acquire beneficial ownership of this portion of the judgment from the mere fact of assignment by Handley. However, the record does show that Handley distributed the consideration paid for the assignment to himself, Marina and Turner in exact proportion to their respective claims against the Normans. Although the trial court made no finding with regard to the effect of such payment, it must be presumed that Marina and Turner accepted such payment as full satisfaction of their claims, thereby relinquishing their equitable interests in the judgment against the Normans and acquiescing in the assignment of the same to Berney. By the acceptance of their portion of the consideration paid by Berney, they ratified the assignment. Under such circumstances, in the absence of any intervention in the action by Marina and Turner, Berney acquired full ownership of the entire judgment. Accordingly, he was entitled to set it off in full against the judgment in favor of Ernest E. Norman against him.

Although the parties have made no reference thereto in their briefs, the trial court, as above noted, made certain findings of fact and conclusions of law to the effect that Handley had "ceased to pursue and abandoned" action number 53641 because he had written the judgment off for income tax purposes and because his attorney considered the judgment of no value and had discarded most of his files pertaining thereto. Such actions and mental processes on the part of Handley and his attorney could have no bearing whatever on the validity of the judgment against the Normans, and the findings pertaining thereto are irrelevant and lend no support to the order denying Berney's motion to set off the Handley judgment.

For the reasons above stated, the order denying defendant Berney's motion to set off the Handley judgment against the judgment in favor of Ernest E. Norman is reversed.

Agee, Acting P. J., and Taylor, J., concurred.