[Civ. No. 11358. Fourth Dist., Div. One. Jan. 31, 1973.]

GELFAND, GREER, POPKO & MILLER, Plaintiff, v.
DORIS E. SHIVENER, Defendant and Appellant;
GERALD R. SCHMELZER, Defendant and Respondent.

366

## COUNSEL

Patricia H. Mason for Defendant and Appellant.

Gerald R. Schmelzer, in pro. per., and Douglas R. Reynolds for Defendant and Respondent.

No appearance for Plaintiff.

## OPINION

**WHELAN, J.**—Doris E. Shivener (Mrs. Shivener) has appealed from a summary judgment in an interpleader action which awarded to Gerald R. Schmelzer one-half of a fund upon the holder of which she had served a writ of execution.

Prior to August 27, 1971, an action for wrongful death of Jeffrey Ellsworth Shivener was settled for $100,000, to be apportioned among his heirs who were his widow Jo Anne, his mother Mrs. Shivener, and his father Carlos Shivener (Shivener).

The widow and Mrs. Shivener had been plaintiffs in the action; Shivener, having refused to join as a plaintiff, was made a defendant.

The amount of the settlement was paid to a firm of attorneys, Gelfand, Greer, Popko & Miller (the Popko firm), which represented the widow, which continued to hold it pending a court apportionment among the heirs.

Shivener, in Oklahoma, on August 27, 1971, retained by written agreement two attorneys, Allan H. Stocker, an Oklahoma lawyer, and Gerald R. Schmelzer of San Diego, to represent him in connection with the wrongful death action, which was described by name. The agreement stated in part:

"As compensation for your services you will receive 50% of all sums awarded me as an heir of my deceased son, Jeffery Ellsworth Shivener, after first deducting any out-of-pocket expenses including my air-transportation to and from San Diego should I appear at the hearing.

"You agree to inform me of any offers of settlement and I agree not to make any settlement directly with the other parties or the insurance company without advising you."

A hearing for apportionment of the settlement amount was held November 9, 1971, attended by the heirs including Shivener with Schmelzer, and at which testimony was taken. As a result the court determined the widow should receive 60 percent and Shivener and Mrs. Shivener 20 percent each of the settlement amount, as embodied in a formal order made November 15.

The mother and father had been divorced in 1958 and since 1960 Shivener had become delinquent in support payments in an amount which by December 8, 1971, including interest, totalled $26,300. Mrs. Shivener obtained a judgment for that amount upon which execution issued on December 8, which was served by a notice of garnishment upon the Popko firm on December 9.

Also on December 9 Schmelzer delivered to the Popko firm a copy of the retainer and contingent fee agreement with Shivener dated August 27, 1971, and a letter directing the Popko firm not to release on Mrs. Shivener's claim more than one-half of the $20,000.

Other counterdemands were served upon the Popko firm which on December 17 filed the present action interpleading Shivener, Mrs. Shivener and Schmelzer.

In that action Schmelzer noticed a motion for summary judgment supported by his declaration and that of Stocker. They show the making of the retainer and contingent fee contract and its date; that prior thereto Stocker, on behalf of Shivener, had sought to retain other counsel in San Diego County without success because it was thought by Ralph W. Graves, the attorney consulted, the chances Shivener would get anything were negligible, after Stocker had received requests from Maurice V. Boudreau, the wife's attorney in the wrongful death action, for written appearance by Shivener and waiver of his rights therein, Mrs. Shivener's attorney stating Shivener's claim had very little value; that attempted negotiation by Stocker with Boudreau proved ineffective; thereafter Stocker made contact with Schmelzer, whose name he found in a legal directory, and who agreed to take the matter on a contingent fee basis after being informed of the opinions of Graves and Boudreau.

Stocker's affidavit also stated: "Based upon my experience, it is my opinion that the contingent fee agreement entered into was reasonable because of the nature of the controversy. Carlos E. Shivener is completely

satisfied with the fee arrangement. 50% contingent fee contracts are common in Oklahoma where the prospects for recovery are uncertain."

Schmelzer's declaration stated he could testify the contingent fee contract was entered into because of the extreme difficulty of the litigation and the high risks involved therein; that Mrs. Shivener's attorney in the divorce action, Patricia Mason, had been extremely upset with the fee agreement, but that Shivener had been and continued to be totally satisfied with it; that before the writ of execution was served or the judgment obtained upon which the writ issued he had given written notice to Patricia Mason of his claim and had given her a copy of the contingent fee contract.

In opposition to the motion for summary judgment there were filed declarations by Patricia Mason and Boudreau.

Boudreau's declaration showed Shivener's attorney did not participate in the wrongful death action prior to settlement; Boudreau learned on August 17 from Schmelzer that the latter would represent Shivener in the apportionment hearing; that hearing took two hours.

Patricia Mason's declaration showed that on November 16, before she obtained the judgment against Shivener, she told Schmelzer she felt the fee was unconscionable both as to his client and the client's legitimate creditors; that the copy of the agreement then given her bore no date.

The motion for summary judgment was granted; the judgment, after allowing attorney's fees and costs to the interpleading plaintiff, awarded the remainder equally between Schmelzer and Mrs. Shivener.

The questions presented here are these:

Is the appeal moot?

Was there an issue of fact for determination by the trial court which made a summary judgment improper?

Necessarily included in the previous question are these:

Does the contingent fee agreement as a matter of law give Schmelzer an ownership interest in the fund, or an equitable lien thereon to secure his fees?

If so, is that interest or lien superior to that of the execution creditor?

A joint answer of Schmelzer and Shivener in the interpleader action alleged Schmelzer and Shivener each was an owner of one-half of the $20,000 apportioned to Shivener pursuant to the August 27 contract; that Mrs. Shivener had no interest or claim on the funds owned by

Schmelzer, and that she and her attorney had been put on notice of Schmelzer's ownership prior to the levy of execution.

The affidavits in support of the motion for summary judgment did not allege any assignment, the existence of a lien, or the intention of the parties to create a lien or to give security.

The memorandum of points and authorities did mention the theory of lien and the authorities in support of such theory.

■ Thus we are confronted squarely with the question whether an attorney's contingent fee contract containing no words as to a lien, security or assignment does as a matter of law and without more create a lien to secure his fees on the judgment or property obtained as a result of his services.

We are not prepared to go so far. As we discuss later, a lien may be created without the use of the word "lien." It does not follow that in every case a lien is created as a matter of law.

Our research persuades us that in the absence of express language declaring a lien, the giving of security or of assignment, the question whether the contract creates a lien is one of fact involving a determination of the intention of the parties.

■ The appeal is not moot. Schmelzer contends Mrs. Shivener's failure to post bond as, he argues, Code of Civil Procedure section 946 requires in this case, caused the attachment levied by Mrs. Shivener to be dissolved and the fund to be paid out. As he maintains the fund was the object of the suit, it no longer exists and the matter is moot.

Code of Civil Procedure section 946 was repealed in 1968 and replaced by sections 916, 919, 921 and 922. Section 921 provides in part: "An appeal by a party who has levied an attachment shall not continue in force the attachment, unless an undertaking be executed and filed on the part of the appellant that the appellant will pay all costs and damages which the respondent may sustain by reason of the attachment, . . ."

It should be obvious that neither former section 946 nor present section 921 of the Code of Civil Procedure would have had any application in this case. Those sections were intended to apply in the case of an appeal from a judgment in the action in which an attachment has been levied. Mrs. Shivener however did not have a writ of attachment levied, but a writ of execution, and this is not an appeal from the judgment in the divorce case of *Shivener* v. *Shivener*.

■ The agreement was executed in the State of Oklahoma. We are satisfied the question of existence of a lien is to be determined by the law of California, the site of the fund. (*Mitsui & Co.* v. *El Dorado Oil Works* (N.D.Cal.) 38 F.Supp. 752.)

■ There was an existing fund to which the father was a claimant, so that there might have been an assignment of the father's rights. The agreement in question does not purport to be and is not an assignment. No ownership interest in the fund was created thereby. (*Isrin* v. *Superior Court,* 63 Cal.2d 153, 158 [45 Cal.Rptr. 320, 403 P.2d 728]; see also *Hendricks* v. *Superior Court,* 197 Cal.App.2d 586, 589 [17 Cal.Rptr. 364].)

However, it is clear from the language of the agreement that Schmelzer's services in seeking to establish Shivener's rights in the fund were to be compensated out of any sums to which it might be established Shivener had a right and to the extent such rights might be established.

■ Under California law an attorney has no lien in the absence of an agreement for a lien (*Echlin* v. *Superior Court,* 13 Cal.2d 368, 373 [90 P.2d 163, 124 A.L.R. 719]; *Wilkins* v. *Oken,* 157 Cal.App.2d 603, 607 [321 P.2d 876]; *Desser, Rau & Hoffman* v. *Goggin* (9th Cir.) 240 F.2d 84, 86); a lien for payment of an attorney's fees out of the proceeds of a judgment obtained as the result of his efforts may be created by contract. (*Jones* v. *Martin,* 41 Cal.2d 23, 27 [256 P.2d 905];[1] *Gostin* v. *State Farm Ins. Co.,* 224 Cal.App.2d 319, 323, 324 [36 Cal.Rptr. 596]; *Haupt* v. *Charlie's Kosher Market,* 17 Cal.2d 843, 845 [112 P.2d 627].)

■ A lien may be created by specific language to that effect in the contract. (*Estate of Kerr,* 63 Cal.2d 875, 880 [48 Cal.Rptr. 707, 409 P.2d 931]; *Cassetta* v. *Del Frate,* 116 Cal.App. 255, 256-257 [2 P.2d 533].)

In order to create the lien the parties are not required to use the word "lien" in their contract. (*Wagner* v. *Sariotti,* 56 Cal.App.2d 693, 697 [133 P.2d 430]; *Bartlett* v. *Pacific Nat. Bank,* 110 Cal.App.2d 683, 689 [244 P.2d 91].)

The court in *Wagner* v. *Sariotti, supra,* 56 Cal.App.2d 693, 697, said: "In order to create such a lien the parties are not required to use the word 'lien' in their contract. The real question in each case is, whether or not the parties have contracted that the lawyer is to look to the judgment he may secure as security for his fee. If so, an equitable lien is created."

---

[1]*Jones* v. *Martin,* 41 Cal.2d 23 [256 P.2d 905], overruled on other grounds in *Fracasse* v. *Brent,* 6 Cal.3d 784, 792 [100 Cal.Rptr. 385, 494 P.2d 9].

Of the cases cited in support of the summary judgment some deal with contracts in which there was express provision for a lien: *Haupt* v. *Charlie's Kosher Market, supra,* 17 Cal.2d 843, 844; *Tracy* v. *Ringole,* 87 Cal.App. 549 [262 P. 73]; *Gostin* v. *State Farm Ins. Co., supra,* 224 Cal.App.2d 319.

In *Jones* v. *Martin, supra,* 41 Cal.2d 23, the contract provided it operated as an assignment and transfer *pro tanto.*

In *Wagner* v. *Sariotti, supra,* 56 Cal.App.2d 693, the client had made a written assignment to the attorney of the percentage interest in the recovery that the fee contract called for. The reviewing court said the only question on the appeal was whether the complaint stated a cause of action, the over-ruling of a demurrer being the only specification of error.

In *Houge* v. *Ford,* 44 Cal.2d 706 [285 P.2d 257], also, an assignment was executed by the client subsequent to the making of the contingent fee agreement.

In *Isrin* v. *Superior Court, supra,* 63 Cal.2d 153, 157-158, the court was called upon to determine whether a solvent attorney with a contingent fee contract had such an interest in his client's cause of action as to deprive the destitute client of a right to a jury trial without prepayment of fees. For that purpose the court reviewed the conflicting decisions of California courts, as to the existence of an attorney's charging lien, noting: "[C]ontingent fee contracts are subject to the normal rules of construction of fiduciary agreements (*Tracy* v. *Ringole* (1927) 87 Cal.App. 549, 551 . . .), a charging lien will be imposed if the parties have manifested an intention that the attorney shall look to the judgment as security for his fee even though the word 'lien' has not been used (*Wagner* v. *Sariotti* (1943) 56 Cal.App.2d 693, 697 . . . [client executed 'assignment' to attorney of one-third interest in recovery, if any]; see generally Note 143 A.L.R. 204); and in some cases the evidence held to demonstrate such an intent has been slight indeed (compare *Bartlett* v. *Pacific Nat. Bank* (1952) 110 Cal.App.2d 683, 689-691 . . . , with *Morrison* v. *Havens* (1938) 24 Cal.App.2d 504 . . .)."

In deciding the question before it, the court said, at page 158: "For our present purposes, however, we need not attempt resolution of such conflicts in the law of attorney's liens. It will be enough to observe that in whatever terms one characterizes an attorney's lien under a contingent fee contract, it is no more than a *security* interest in the *proceeds* of the litigation."

In *Bartlett* v. *Pacific Nat. Bank, supra,* 110 Cal.App.2d 683, 685, the agreement recited: " 'My compensation for this work is to be retainer of

$500.00 payable now, and one-fourth of all money recovered for the Committee and/or Corporation, whether by legal action or by compromise acceptable to the Committee and/or Corporation, and shall be payable upon receipt of the money by them. . . .' "

In *Bartlett*, the trial court found that it was agreed plaintiff's compensation would be a lien upon the money recovered. The Court of Appeal said it was to be determined whether there was any substantial evidence to support the finding and concluded there was, noting, at page 690: "Coupling together the fact that the only possible source of compensation was the bond proceeds, the language of the contract 'payable upon receipt of the money by them' and 'one-fourth of all money recovered' (see *Bennett* v. *Potter*, 180 Cal. 736 . . . , where the court interpreted the phrase that the attorneys should receive 'as their compensation ten (10) percent of whatever is recovered' to mean, not 10 percent of *the value* of whatever is recovered, but *of the thing itself*), the apparent interpretation of the contract by the parties to it, the agreement of defendant to withhold, and all the circumstances of the case, there is substantial evidence to support the court's finding that a lien was created. We add, that the evidence is susceptible of a contrary interpretation, but as such interpretation is not compelled by the evidence we are bound by the court's determination."

The court in *Norman* v. *Berney*, 235 Cal.App.2d 424, 433 [45 Cal. Rptr. 467], noted: "The contract between Norman and Weingarten is conspicuously lacking in any language indicative of an intent to create a lien upon or an equitable assignment of a portion of any judgment which Weingarten might obtain on Norman's behalf."

In *City of Los Angeles* v. *Knapp*, 7 Cal.2d 168 [60 P.2d 127], the fund in dispute was a sum awarded as attorney's fees to a condemnee after the abandonment of the condemnation proceeding. After trial the court found a contingent fee agreement that did not specifically mention a lien constituted an assignment of an interest in the fund, the fee arrangement having been made in contemplation of an award of fees to be made under Code of Civil Procedure section 1255a. In citing the rule in this state "that an attorney generally has no lien on a judgment procured by his professional services in the absence of an express agreement for a lien [citations]," the court went on to distinguish a judgment for attorney's fees under section 1255a.

In *McGown* v. *Dalzell*, 72 Cal.App. 197, 200-201 [236 P. 941], the court said: "We find no case that holds that a contract providing merely for the payment of a contingent fee for legal services in an action for and which results in a money judgment, in the absence of other terms in legal

effect constituting a transfer of a part of the claim or judgment, gives a lien upon or interest in the judgment [citations].

"......................

"... It is a fair inference from the evidence that the agreement between McGown and Witter was intended by both to create more than a mere power, and was designed to secure Witter's claim by the transfer of an interest to that extent in the judgment."

In *McCafferty* v. *Gilbank,* 249 Cal.App.2d 569, 575 [57 Cal.Rptr. 695], the court reviewed a judgment of nonsuit under the rule that every favorable intendment is to be accorded the plaintiff's evidence, which had to do with a claimed lien for something other than attorney's fees. Clearly, the effect of the judgment of reversal was to recognize the question of the existence of a lien as one of fact, the court stating among other things: " 'The form of a written, equitable transfer or assignment, based upon valuable and reasonable consideration, is not important if the intention of the transferor is ascertainable and the instrument is actually delivered.' [Citation.] Too, in determining whether an assignment has been made, the court may go outside the terms of the instrument and find an assignment from the conduct of the parties."

*Skelly* v. *Richman,* 10 Cal.App.3d 844, 855 [89 Cal.Rptr. 556], leaves some doubt as to its effect. In a jury trial an instruction was given as follows: " 'Where a client agrees that an attorney is to have a fee based upon a percentage of whatever amount is recovered . . . and is to be paid from the sum . . . recovered, the attorney has a lien upon any funds paid in . . . satisfaction of that action. ¶ The attorney's lien . . . is a contractual right which is subject to protection from unlawful interference.' "

The fee contract originally was oral; later it was memorialized in an exchange of telegrams. There was no mention of the word "lien," nor of assignment.

In discussing whether the word "lien" was necessary, the reviewing court said: "In *Isrin* v. *Superior Court,* 63 Cal.2d 153 . . . , the Supreme Court reviewed the subject of attorney's liens in answering the question (in the negative, incidentally) whether the existence of a lien would give the attorney such an interest in the subject of his agency as to make him responsible for financing the litigation, precluding the client from proceeding *in forma pauperis.* It was posed that the early rule of nonrecognition of attorney's liens [citation] had little vitality left; and allusion was made to a line of cases wherein liens were recognized if the parties manifested an intent that the attorney should look to the judgment as security even though the

word 'lien' had not been used and even when evidence of such intent was slight. [Citations.] Also pointed to were decisions (beginning with cases where the underlying action was for recovery of interest in land, but extending to those where it was for recovery of personal injury damages) saying that a contingent fee contract ipso facto transfers a vested equitable interest in the recovery, with reference specifically (at p. 158) to *Jones* v. *Martin,* 41 Cal.2d 23, 27 . . . . The tenor of these observations seems to favor a rule that there need not be specific reference to a lien. Defendants claim Skelly's testimony negated a lien, but he merely said that he did not know how to perfect one. There was considerable reference to the fact that his fee would come from any sums collected. *The question was one for the jury.*"[2] (Italics ours.) (*Skelly* v. *Richman, supra,* at p. 865.)

From another jurisdiction, *Ingersoll* v. *Coram* (D.Mass.) 127 F. 418 has been cited as authority that the question of existence of a lien is one of fact. The decision was one upholding a demurrer to a cause of action for a statutory lien, and overruling a demurrer to a cause of action for a contractual lien.

Also, in *United States* v. *Hudson* (D.Mont.) 39 F.Supp. 797, the question was treated as one of fact, the court after a contested trial awarding a lien to the attorney.

In reversing a summary judgment that held a certain written agreement to be an accord and satisfaction, the court in *D. E. Sanford Co.* v. *Cory Glass etc. Co.,* 85 Cal.App.2d 724, 730 [194 P.2d 127], said: " 'The question whether an agreement amounts to an accord and satisfaction is . . . a question of the intention of the parties and is, therefore, a question of fact . . . .' "

 It cannot be said as a matter of law a lien was not created by contract. There may be one or more circumstances which, taken together with the written agreement, would support a finding a lien was created. One circumstance that suggests itself is the fact Shivener was in Oklahoma, and the fund and Schmelzer in California. The arrangement by which the entire fund would be paid to Shivener in Oklahoma might make it difficult for Schmelzer to collect his fees.[3]

 It is immaterial that Shivener's attorney did not participate in the litigation that led up to the $100,000 settlement. Contingent fee con-

---

[2]A petition for hearing in the Supreme Court was not filed.

[3]Subsequent developments that prevented any part of the fund from going to Shivener must be disregarded in discovering the intentions of Shivener and his attorney when the agreement was made.

tracts to establish a right in an existing fund are recognized in the law. (*Houge* v. *Ford, supra,* 44 Cal.2d 706; *Estate of Kerr, supra,* 63 Cal.2d 875; *Bartlett* v. *Pacific Nat. Bank, supra,* 110 Cal.App.2d 683.)

■ The suggestion is unfounded that the language of the contract was calculated to deceive the trial court or Shivener into believing Shivener's attorneys were to do more than seek to establish Shivener's right to a share of the settlement. Under the facts as presented, both Shivener and the trial court were aware of the positions when the contract was made.

The execution lien would not have been prior to Schmelzer's lien if one existed.

In *Del Conte Masonry Co.* v. *Lewis,* 16 Cal.App.3d 678 [94 Cal.Rptr. 439], the contract for a lien to secure the plaintiff's attorney's fees incurred in an action was made after a creditor of the plaintiff had given notice of a motion to secure a statutory lien against the anticipated judgment. Such a move should have made it easy to determine that the creditor had the superior equity.

■ Accordingly, *Del Conte* does not compel a holding Mrs. Shivener's levy of a writ of execution gave her priority over Schmelzer's lien, should it be found he had one. The lien in favor of Schmelzer, if one existed, derived from a contract and would have attached as soon as Shivener's interest in the settlement payment had been established. Mrs. Shivener was not an assignee for value as was the situation in *Norman* v. *Berney, supra,* 235 Cal.App.2d 424. She had actual knowledge of Schmelzer's fee contract and of his claims before she obtained her judgment. If her writ was served before Schmelzer gave notice of his contract to the Popko firm, no equities in her favor arose thereby. The Popko firm did not pay any moneys over to the sheriff, and unless they made a return to the writ showing they held all the $20,000 for Shivener, they have not suffered any prejudice.

■ Mrs. Shivener has no standing to contest the amount of the fee for which Shivener contracted with his attorneys. The effect of that contract cannot be considered as an assignment in fraud of creditors.

The case of *Blattman* v. *Gadd,* 112 Cal.App. 76 [296 P. 681], cited by Mrs. Shivener, is one in which the plaintiff was a landowner and taxpayer in a public taxing district whose directors had entered into a contingent fee agreement attacked by plaintiff on behalf of himself and other taxpayers as being a waste of public funds. Before trial the directors of the district who had been named as defendants adopted the position of the plaintiff so that

the reviewing court held it to be moot whether the plaintiff had standing to attack the contract.

In the instant case if the court that awarded Shivener $20,000 had not awarded him anything, Schmelzer would not have been entitled to a fee; if Shivener had been awarded $1,000, Schmelzer would not have received more than $500 for himself and the Oklahoma lawyer. In neither of those eventualities could Schmelzer have recovered on a *quantum meruit*. He should not be compelled to do so because he was singularly successful on behalf of his client.

It may be noted that as a result of Schmelzer's efforts Mrs. Shivener has benefited indirectly.

 The judgment is reversed solely upon the ground there was a triable issue of fact, namely whether the parties to the fee contract intended to and did give Schmelzer a security interest in or a lien upon the fund.

Brown (Gerald), P. J., and Cologne, J., concurred.