[No. A039296. First Dist., Div. Three. Dec. 22, 1988.]

BLUXOME STREET ASSOCIATES et al., Plaintiffs;
ERIC H. WOODS, et al., Defendants and Respondents, v.
FIREMAN'S FUND INSURANCE COMPANY et al., Claimants
and Appellants;
FLYNN & STEWART, Claimant and Respondent.

**COUNSEL**

David E. Bunim, Timothy H. Power, Robert B. Ehrenworth, Haas & Najarian, Paul A. Epstein, Deborah B. Honig and Epstein & Harris for Claimants and Appellants.

Michael J. Flynn, Paul A. Stewart and Flynn & Stewart for Claimant and Respondent.

No appearance for Defendants and Respondents.

**OPINION**

**STRANKMAN, J.**—The issue for our determination is the priority among a prior contractual lien on litigation settlement proceeds, of which no notice was filed in the litigation, and a subsequent attachment lien and a contractual lien, notices of which were filed. The trial court held that the prior contractual lien has priority, and we agree.

I

*Procedural Background and Issues on Appeal*

In March 1987, a settlement was reached in a legal malpractice action entitled Woods v. Neisar (action No. 781175, hereafter Woods v. Neisar), one of several consolidated actions pending in the Superior Court of the City and County of San Francisco. The settlement provided in part for payment of the sum of $582,500 to Eric H. Woods. This sum was put into a trust account of the law firm of Hassard, Bonnington, Rogers & Huber (Hassard Bonnington), Woods's attorneys in Woods v. Neisar. Hassard

Bonnington, appellant Haas & Najarian, appellant Fireman's Fund Insurance Company (Fireman's Fund), and respondent Flynn & Stewart, among others, each claimed a lien on the settlement proceeds.

On May 6, 1987, Woods filed a motion for order establishing lien priorities and allowing distribution of proceeds. Following extensive briefing by all lien claimants and two hearings, the trial court ordered the $582,500 in settlement proceeds to be disbursed as follows: (1) $352,562.14, plus interest, to Hassard Bonnington, pursuant to a retainer agreement which provided for a lien in favor of Hassard Bonnington on any judgment or proceeds recovered in the litigation; (2) $72,500 plus interest to Charles Schilling; (3) the remainder (approximately $150,000) to respondent Flynn & Stewart, not to exceed $180,852.46, plus interest, pursuant to a security agreement to secure payment of past and future legal services rendered by Flynn & Stewart unrelated to Woods v. Neisar; (4) the remainder (none), if any, to appellant Haas & Najarian, Woods's former attorneys, pursuant to a written stipulation for lien; (5) the remainder (none), if any, to Rubloff, Inc., a judgment lien creditor; (6) the remainder (none), if any, to appellant Fireman's Fund pursuant to an attachment lien (Code Civ. Proc., § 491.410).

Appellants Haas & Najarian and Fireman's Fund do not challenge the priority of the liens of Hassard Bonnington or Charles Schilling. Rather, they contend that their liens have priority over the lien of respondent Flynn & Stewart and that, accordingly, their liens have third and fifth priority, respectively. Flynn & Stewart contends that its lien was created prior in time to those of appellants and that, under the "first in time is first in right" rule, its lien takes priority.

## II

### Creation of Liens

By a "security agreement" dated December 17, 1984, Woods granted to Flynn & Stewart a security interest in Woods's interest in Woods v. Neisar and any proceeds thereof, to secure payment for past and future legal services rendered by Flynn & Stewart for the benefit of Woods, unrelated to Woods v. Neisar. As discussed *infra,* the security agreement created an enforceable contractual lien pursuant to Civil Code section 2881, subdivision 1.

On June 23, 1986, Haas & Najarian filed in Woods v. Neisar a "stipulation for lien," whereby Woods stipulated to a lien in favor of Haas & Najarian on any recovery in that action in the sum of $77,400, plus interest,

based upon an unpaid promissory note. The stipulation created an enforceable contractual lien pursuant to Civil Code section 2881, subdivision 1.

On April 20, 1987, Fireman's Fund, the plaintiff in a separate action against Woods,[1] obtained a writ of attachment (Code Civ. Proc., § 488.010 et seq.) against Woods's interest in Woods v. Neisar, and an order creating a lien thereon pursuant to Code of Civil Procedure section 491.410.

Fireman's Fund also filed a "notice of lien" in Woods v. Neisar.

### III

#### Validity of Liens

A. *Liens of Flynn & Stewart and Haas & Najarian.*

Civil Code section 2881, subdivision 1, provides that liens may be created by contract: "A lien is created: [¶] 1. By contract of the parties; or, [¶] 2. By operation of law." ▮ The liens of Flynn & Stewart and Haas & Najarian were valid contractual liens under this section. (See *Cetenko* v. *United California Bank* (1982) 30 Cal.3d 528, 531-535 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657].) ▮ That the security agreement in favor of Flynn & Stewart did not use the term "lien" did not prevent the creation of a lien under Civil Code section 2881, subdivision 1. (*Gelfand, Greer, Popko & Miller* v. *Shivener* (1973) 30 Cal.App.3d 364, 371 [105 Cal.Rptr. 445] [the parties are not required to use the term lien in their contract in order to create the lien].) The security agreement provides that Woods "grants to Flynn & Stewart, . . . a security interest in any and all of the collateral," defined to include Woods's interest in Woods v. Neisar, to secure payment of a promissory note plus any additional amounts owing arising from the rendition of services by Flynn & Stewart to Woods. Such language describes a lien as defined by Civil Code section 2874.[2]

▮ Fireman's Fund contends that the Flynn & Stewart lien is unenforceable because its purpose is to secure payment of attorney fees for services rendered unrelated to the litigation and which did not generate the settlement proceeds. Fireman's Fund argues that an equitable or implied attorney's lien arises only "to ensure that an attorney whose labors have

---

[1] That action filed in the Superior Court of the City and County of San Francisco, action No. 872600, is entitled Fireman's Fund Insurance Company v. Eric H. Woods and John Zellerbach Corporation et al.

[2] Civil Code section 2874 defines a general lien as "one which the holder thereof is entitled to enforce as a security for the performance of all the obligations, or all of a particular class of obligations, which exist in his favor against the owner of the property."

created a fund for his client's benefit will not be deprived of his legitimate compensation," which is not the purpose of the Flynn & Stewart lien.

Fireman's Fund misconstrues the Flynn & Stewart lien as a purported equitable attorney's lien. Unlike certain attorney liens arising by equity, e.g., a lien upon a judgment to secure payment of legal fees based upon a contingency fee agreement (see discussion in *Gelfand, supra,* 30 Cal.App.3d at pp. 370-375), the Flynn & Stewart lien is based upon contract, not equitable grounds. That Flynn & Stewart is a law firm and the purpose of the lien is to secure payment of attorney fees is immaterial to the creation and enforceability of the lien under Civil Code section 2881, subdivision 1. The lien would be enforceable, barring other factors, even if Flynn & Stewart were not a law firm and the obligation secured were not payment of legal fees.

Our holding is supported by the reasoning applied by the federal bankruptcy court in *In re Dickinson* (Bankr.S.D. Cal. 1982) 24 Bankr. 547, in affirming the validity of a contractual lien under California law. There, two doctors sought to enforce in a federal bankruptcy proceeding alleged liens on the proceeds of personal injury litigation involving the debtor. The debtor, injured in an accident, had not paid the two doctors who were treating her. The doctors had agreed to look for payment to the proceeds of the personal injury litigation filed on her behalf, and the debtor had executed documents entitled "Medical Reports and Doctor's Lien" purporting to grant them liens on any settlement or judgment she might recover.

The bankruptcy court was required to determine the status of the liens under California law. The court stated that California law recognizes that liens may be created by contract of the parties under Civil Code section 2881, subdivision 1. In reviewing California law, the court found that although typically a litigant's attorney acquires a contractual lien on the litigation proceeds, the attorney-client scenario is not the only one in which a contractual lien on such proceeds may arise. The court concluded that, because the documents entitled "Medical Reports and Doctor's Lien" clearly provided for the creation of a lien, the doctors had a valid enforceable lien under California law.

*Cetenko* v. *United California Bank, supra,* 30 Cal.3d 528, relied upon by appellants, is not inconsistent with our holding. In *Cetenko,* the court determined the priority of a prior lien in favor of an attorney for legal fees on a judgment in favor of his client, over a subsequent judgment creditor's lien. The attorney had entered into an agreement with his client for payment of a stated hourly rate for services rendered. The agreement provided that payment would be deferred and the fees owed would become a lien upon any recovery in an action to be filed on behalf of the client to establish owner-

ship of property. (*Id.,* at p. 530.) After securing a judgment for his client in the action, the attorney, over the objection of a judgment lien creditor, sought the release of the entire judgment proceeds to him "as payment for services rendered in this *and several other matters.*" (*Id.,* at p. 531, italics added.) The trial court ordered the release.

On appeal, the court affirmed. The court stated: "A lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his client for legal services rendered has been recognized in numerous cases. . . . Moreover, section 2881, subdivision 1, of the Civil Code expressly provides for the creation of a lien by contract, and neither logic nor authority justifies the conclusion that such liens do not apply to judgments." (*Cetenko* v. *United California Bank, supra,* 30 Cal.3d at pp. 531, 533-534.) The court rejected the judgment creditor's contention that an attorney's contractual lien on a future judgment arises only pursuant to contracts for contingency fees. (*Id.,* at p. 532.) Further, and significant to our case, the court did not find that the fees incurred for matters unrelated to the action were not properly secured by the lien.

Fireman's Fund as well as Haas & Najarian next contend that the Flynn & Stewart lien is invalid because the California Uniform Commercial Code (UCC) financing statement filed by Flynn & Stewart incident to the security agreement was void *ab initio* and did not constitute notice of or perfect the lien.

The security agreement reflects the attorneys' belief that their security interest came within the purview of division 9 of the UCC (Cal. U. Com. Code, § 9101 et seq.) in that it provides that a UCC financing statement is to be filed with the California Secretary of State to perfect the lien. A financing statement was in fact filed with the Secretary of State.

We agree with appellants that division 9 of the UCC does not apply to the Flynn & Stewart security interest or lien. The security agreement grants to Flynn & Stewart a lien on Woods's interest in a cause of action based upon legal malpractice—a tort cause of action. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 804, p. 156.) California Uniform Commercial Code section 9104 specifically provides that such lien is not covered by division 9: "This division [div. 9] does not apply . . . (k) To a transfer in whole or in part of any claim arising out of tort." (See *In re Southland Supply, Inc.* (9th Cir. 1981) 657 F.2d 1076, 1080-1081 [the security interest provisions of the UCC do not apply in whole or in part to any claim arising out of tort].) The comment to California Uniform Commercial Code section 9102 (1972 amend.), which sets forth the policy and scope of division 9, states that its main purpose "is to bring all consensual security interests in personal prop-

erty and fixtures under this Article, *except for certain types of transactions excluded by Section 9-104."* (Italics added.) The drafters of article 9 excluded tort claims from its purview because tort claims ". . . do not customarily serve as commercial collateral; . . ." (Deering's Ann. Cal. U. Com. Code, § 9104, com. (1986 ed.) p. 405; 23C West's Ann. Cal. U. Com. Code, § 9104, com. (1988 pocket pt.) p. 100.)

■ Because division 9 of the UCC did not apply to Flynn & Stewart's security agreement or lien created thereby, the filing of the UCC financing statement did not operate to provide notice of or "perfect" the lien under California Uniform Commercial Code section 9401.

■ However, although the Flynn & Stewart lien was not perfected under the UCC, and, accordingly, was not entitled to the benefits accorded to a perfected security interest, it nevertheless was valid and enforceable, as discussed *ante,* under Civil Code section 2881, subdivision 1. In *Cetenko, supra,* 30 Cal.3d 528, the court indicated that the UCC financing statement filed by the attorney was "superfluous" to the creation of a valid lien under Civil Code section 2881, subdivision 1. (30 Cal.3d at pp. 531, fn. 5 and accompanying text, pp. 533-534.) And in *In re Southland Supply, Inc., supra,* 657 F.2d 1076, the court found that although the debtor could not convey a security interest in potential lawsuit proceeds based on a tort cause of action under division 9 of the UCC, it still could transfer an enforceable lien on the potential proceeds under Code of Civil Procedure section 688.1. (*Southland Supply, supra,* at p. 1080.)

Appellants' next contention is that the Flynn & Stewart lien is unenforceable because there was no notice of the lien. Unlike appellants, who filed written notices of lien in Woods v. Neisar, Flynn & Stewart filed no such notice.

Providing notice of a lien is a statutory prerequisite to the creation or enforceability of certain types of liens. For example, as explained below, the creation of an attachment lien on a litigant's interest in an action is dependent upon the filing of notice of the lien in that action. (Code Civ. Proc., § 491.410, subd. (b).) A judgment lien on real property is created by the recording of an abstract of judgment with the county recorder (Code Civ. Proc., § 697.310, subd. (a)), and a judgment lien on personal property is created by the filing of notice thereof with the Secretary of State. (Code Civ. Proc., § 697.510, subd. (a).) A mechanic's lien is enforceable only if the claimant first gives notice under Civil Code section 3097, and then records the claim of lien within certain time constrictions. (Civ. Code, §§ 3114, 3115, 3116.)

As to a contractual lien under Civil Code section 2881 on a litigant's interest in a tort claim, however, we find no authority, statute, or case law which requires notice to create such lien. In *Cetenko, supra,* 30 Cal.3d at pages 532-533, the court rejected the argument that the attorney's lien was a disfavored "secret lien" and therefore should not be enforced. The court found there was no authority which required notice of such lien as a condition to its enforceability. (*Id.,* at p. 532; see also *Hansen v. Jacobsen* (1986) 186 Cal.App.3d 350, 358 [230 Cal.Rptr. 580].)

We conclude that appellants' contentions relating to the validity and enforceability of the Flynn & Stewart contractual lien have no merit.

B. *Fireman's Fund lien.*

In the Fireman's Fund separate action against Woods (discussed *ante*), its lien was created pursuant to title 6.5 of the Code of Civil Procedure (§ 481.010 et seq.) governing attachment law. Code of Civil Procedure section 491.410, subdivision (a), provides: "If the defendant [Woods] is a party to a pending action or special proceeding [Woods v. Neisar], the plaintiff [Fireman's Fund] may obtain a lien under this article, to the extent required to secure the amount to be secured by the attachment, on both of the following: [¶] (1) Any cause of action of the defendant for money or property that is the subject of the other action or proceeding, if the money or property would be subject to attachment if the defendant prevails in the action or proceedings. [¶] (2) The rights of the defendant to money or property under any judgment subsequently procured in the other action or proceeding, if the money or property would be subject to attachment."

Subdivision (b) of section 491.410 of the Code of Civil Procedure provides that to obtain a lien under this section, the plaintiff/creditor must file in the other pending action (1) a notice of the lien, (2) a copy of the right to attach order, and (3) a copy of the court order permitting creation of a lien.

Accordingly, unlike a contractual lien under Civil Code section 2881, subdivision 1, an attachment lien under Code of Civil Procedure section 491.410 is created only upon the filing of notice of lien and other papers specified in that section. As stated, Fireman's Fund filed these documents, at which time its lien became effective.

## IV

### *Priority of Liens*

In the absence of statutory rules governing the priority of liens, or an agreement to the contrary, the general rule is that different liens on property

have priority among themselves according to the time of their creation. Civil Code section 2897 provides: "Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia."

 Here, the Flynn & Stewart lien was created in 1984 when the parties entered into the security agreement, prior to the creation of the Haas & Najarian lien in June 1986 and the creation of the Fireman's Fund lien in April 1987. Thus, absent any pertinent statutory authorities or equities altering priority, the prior Flynn & Stewart lien takes precedence over appellants' liens.

Appellants argue that their liens should take priority over the Flynn & Stewart lien because they provided written notice of their liens. California statutes require that notice of *certain* liens be provided to ensure their priority over subsequent liens. For example, the UCC requires that a financing statement be filed with the Secretary of State to perfect liens and ensure their priority over subsequent liens in commercial security transactions within the purview of division 9 of the UCC. (Cal. U. Com. Code, §§ 9301-9303, 9312, 9401.) As to liens and other interests in real property, recordation provides constructive notice of the contents of the documents creating the interest (Civ. Code, §§ 1213, 2934, 2952), and priorities among several interests in a parcel of real property are determined generally by the recording date of the documents evidencing the respective interests. (See generally, 2 Miller & Starr, Current Law of Cal. Real Estate (1977) § 11.3, p. 9.)

 The lien of Flynn & Stewart on Woods's tort claim and proceeds thereof, however, is subject neither to the UCC nor the recording laws affecting liens on real property. We find no statutory authority which requires notice of a lien on a litigant's interest in a tort claim to ensure the priority of that lien over other subsequent liens. Although, as discussed *ante,* the creation of Fireman's Fund's attachment lien in Woods v. Neisar depended upon notice thereof filed in the action (Code Civ. Proc., § 491.410), such notice does not affect the priority of that lien among other conflicting liens.

We therefore conclude we are relegated to the general rule governing priorities set forth in Civil Code section 2897 in determining the priority of the liens here.

*Cetenko* is in accord. There the court held that the attorney's contractual lien, created several years before a judgment creditor was granted a lien, had priority over the judgment creditor's lien under the rule of Civil Code section 2897. (*Cetenko* v. *United California Bank, supra,* 30 Cal.3d at

p. 534.) The court found that the notice of the attorney's lien filed in the litigation was filed "in an excess of caution" and was "superfluous" to the determination of the priority of the lien. (*Id.,* at p. 533 and fn. 5 therein; see *Hansen* v. *Jacobsen, supra,* 186 Cal.App.3d at p. 356.)

Under Civil Code section 2897, our analysis of the priority of the Flynn & Stewart lien does not end with the determination that it was created prior to appellants' liens. The language of the statute itself requires that we also determine whether the equities of the lienholders are equal. (See *Del Conte Masonry Co.* v. *Lewis* (1971) 16 Cal.App.3d 678, 681 [94 Cal.Rptr. 439]; *Smitton* v. *McCullough* (1920) 182 Cal. 530 [189 P. 686].) For example, in *Del Conte,* the trial court's determination that a judgment creditor's lien had priority over a prior contractual lien of an attorney for services performed in the action was upheld on appeal on the ground that the equities favored the judgment lien creditor. The contract between the plaintiff-debtor and the attorney to grant the attorney a lien was not made until after the judgment creditor had given notice that it intended to move the court for a lien under Code of Civil Procedure section 688.1. (16 Cal.App.3d at p. 681.)

We find the equities here do not favor Fireman's Fund or Haas & Najarian over Flynn & Stewart. Fireman's Fund, as an attachment lien creditor, did not detrimentally rely in any way upon the proceeds of Woods v. Neisar. Haas & Najarian, like Flynn & Stewart, did not generate the funds at issue but sought payment for legal services unrelated to Woods v. Neisar, and there was no showing of detrimental reliance on its part.

For these reasons, the equities being equal, the prior Flynn & Stewart lien takes precedence over appellants' subsequent liens.

### V

### *Disposition*

The order establishing lien priorities and authorizing distribution of settlement proceeds is affirmed.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied January 20, 1989.